ISAAC HAMMICK and LUCINDA HAMMICK, his wife, *against* REUBEN BRONSON.

MOTION for a new trial.

Ejectment for one undivided third part of a certain piece of land in *Cheshire*. The cause was tried before the Superior Court, upon the plea of *no wrong or disseisin ;* and a verdict was found for the plaintiffs. The writ and declaration were as follows, *viz.* "Then and there to answer unto *Isaac Hammick* and *Lucinda Hammick*, his wife," &c. "in a plea that to the plaintiffs, the defendant render the seisin, and quiet and peaceable possession of one undivided third part of a certain piece of land, bounded," &c. "Whereupon the plaintiffs declare and say, that at *Cheshire* aforesaid, on the 21st day of *May*, 1810, they, the plaintiffs, became well seised and possessed of one undivided third part of the aforesaid premises." The disseisin of the plaintiffs was then alleged ; and the declaration concluded, by demanding the surrender of one undivided third part of the land, &c.

The plaintiffs claimed title to the land in question, by virtue of the levy of an execution issued on a judgment rendered in their favour jointly, against one *Jared Bellamy*, for a debt due to the wife previous to the intermarriage of the plaintiffs.

On the trial, the plaintiffs, for the purpose of proving their marriage, offered the testimony of sundry witnesses, to shew, that for a long time, they had lived together as husband and wife ; and that *Lucinda* had been generally considered and reputed to be the wife of the said *Isaac*. The defendant objected to the admission of this evidence, on the ground

In ejectment by husband and wife, the plaintiffs claimed title by virtue of the levy of an execution issued on a judgment rendered in their favour, jointly, for a debt due to the wife before coverture, by which the land in question was regularly set off to the execution creditors : Held, that the plaintiffs possessed a joint interest in the land, and were entitled to a recovery.

Held, also, in such case, that evidence of cohabitation and reputed marriage of the plaintiffs, was admissible.

that it was not competent for the plaintiffs to prove the fact of their marriage by reputation : But the court overruled the objection, and admitted the evidence. It was admitted, that the defendant was in possession of the demanded premises, at the time of the commencement of the action.

It was contended, in behalf of the defendant, that the title acquired by the levy of the execution, was not such as to entitle the plaintiffs to a recovery in the present action; and claimed, that the verdict ought to be in his favour : But the court, in their charge to the jury, instructed them, that the law was so, upon the facts above stated, that the plaintiffs were entitled to recover ; and directed them to return their verdict accordingly.

The defendant, after verdict, moved in arrest of judgment, on the ground of the insufficiency of the declaration.

*N. Smith* and *Bristol*, in support of the motion.

1. The evidence offered by the plaintiffs, on the trial before the Superior Court, was improperly admitted. The court permitted the marriage to be proved, by evidence of cohabitation and common report. In actions brought against husband and wife, evidence of marriage, by reputation, is sufficient ; but the rule is otherwise, when they themselves are plaintiffs. *Peake's Ev.* 357. *Dickinson* et ux. v. *Davis*, 1 *Str.* 480. *Morris* v. *Miller*, 4 *Burr.* 2057. The plaintiffs, alleging themselves to be husband and wife, must prove the fact, by the best evidence in their power. But it will be said, that proof of the marriage was unnecessary. This proposition is denied. The plaintiffs claim to have been jointly seised of the demanded premises, as husband and wife. Was it not necessary, therefore, that the marriage should be proved ? Was not the fact of the marriage put in issue ? And could the plaintiffs recover, without proof of such fact ? The plaintiffs' title resulted entirely from the relation of husband and wife. It was necessary, therefore, that the marriage should have been proved *de facto*.

2. The wife had no title to the land in question, supposing the fact of the marriage to have been lawfully proved. The

title was vested in the husband alone, by virtue of the levy of the execution. The *chose in action* of the wife, was reduced to possession, by the judgment, and became the absolute property of the husband. Upon what principle, then, can the wife claim title to the land? The title was acquired by the levy of the execution, and the execution was the sole property of the husband. It follows, most clearly, that the title vested in the husband, and in him alone. *Beamond* v. *Long. Cro. Car.* 208, 227. *Gabriel Miles'* case, 1 *Mod. Rep.* 179. *Woodyer* v. *Gresham,* 1 *Salk.* 116. S. C. *Comb.* 455. *Co. Litt.* 351. *Obrian* v. *Ram,* 3 *Mod. Rep.* 189. S. C. *Comb.* 103.

Besides, the declaration is insufficient. The seisin of the plaintiffs is not so alleged as to support the judgment. The proof does not comport with the declaration. *Took* v. *Glascock,* 1 *Saund. Rep.* 253. 1 *Chit. Plead.* 201.

*Daggett,* contra.

1. The evidence offered by the plaintiffs, on the trial, was properly admitted. In the first place, if any proof of the fact of the marriage was necessary, evidence of cohabitation and common reputation, was proper for this purpose. Proof of actual marriage is required only in two cases: In prosecution for *bigamy,* and in actions for criminal conversation. *Morris* v. *Miller,* 4 *Burr. Rep.* 2058. In actions of *assault* and *battery,* by husband and wife, for the battery of the wife, evidence of the fact of the marriage is not required. But secondly, it was not necessary to prove the marriage. *Hammick* and his wife owned the land, by virtue of the levy of the execution. It is not material whether she was lawfully his wife, or not. It is sufficient that they possessed a joint interest in the land.

2. The husband and wife, by the levy of the execution, became *joint-tenants* of the land. The action was, therefore, properly brought in the names of both. It is a principle too well established, now to be controverted, that in cases where the husband and wife may join, and an action is brought in the name of both, and one of them dies after

judgment, the judgment will belong to the survivor. *Bidgood* v. *Way* & ux. 2 *Black. Rep.* 1239. 2 *Com. Dig.* 84, 85. *Dub.* edit. Baron and Feme, F. 1. *Anon. Com. Rep.* 31, 32. *Oglander* v. *Barton*, 1 *Vern.* 396. *Bond* v. *Simmons*, 3 *Atk.* 20, 21. 4 *Vin. Abr.* 38, 39, 109, 111, 112. 1 *Chit. Plead.* 17 to 21. They are *joint-tenants* of the judgment, and consequently, by the levy, they possess a joint interest in the land; and in case of the death of either husband or wife, it will go to the survivor. Whenever a judgment is rendered in favour of two or more persons jointly, they are the legal owners of such judgment.

But it is said, that by the levy of the execution, the title of the land is vested in the husband. The truth is, the property belongs to the judgment creditors. It is set off to them; and, of course, it belongs to them jointly. Suppose a sale of the wife's real estate; the purchase money, when paid, belongs to the husband: But if a grant of land be made to husband and wife, the deed will vest the title in them both.

The objection in relation to the mode of declaring, is altogether untenable. It is claimed, that the husband must bring a separate action for his share of the property; another jointly with the wife for her share. This doctrine is supported neither by precedent nor principle. The declaration is sufficient, if they can shew that they are *joint-tenants* of the property. This is the mode always adopted, in suits brought by *joint-tenants* and *tenants in common*. They must join in the action; they cannot sever.

INGERSOLL, J. (After stating the case.) The first question is, whether it was proper to admit witnesses to swear to the cohabitation, and reputation of marriage of the plaintiffs? I am of opinion that it was proper. I take it to be fully settled, both in this State, and it *Great-Britain*, that the fact of marriage may be proved, by evidence of this kind, in all cases, except in prosecutions for *bigamy*, and in actions for criminal conversation with the wife. I know not, indeed,

June, 1812.

HAMMICK
*v.*
BRONSON.

but that in this State, it is necessary to have direct evidence of the marriage, in a prosecution for *adultery.*

As to the other question, it was argued by the counsel for the defendants, that the land in dispute belonged to the husband solely. That by the recovery of the judgment, the debt due to the wife, being a *chose in action,* passed *in rem judicatam,* and became the exclusive property of the husband. To prove this doctrine they cited *Gabriel Miles'* case, 1 *Mod. Rep.* 179. *Beamond* v. *Long, Cro. Car.* 208. *Woodyer* v. *Gresham,* 1 *Salk.* 116. *Co. Litt.* 351. *Obrian* v. *Ram,* 3 *Mod. Rep.* 189. On the other side, it was urged, that the judgment was in favour of the husband and wife, and being a joint judgment, the land levied on was their joint property; and of course, that the evidence maintained the issue. That further, if the husband or wife died while the matter lay in judgment, the survivor would have been entitled to the whole. To prove this side of the question, *Bidgood* v. *Way* & ux. 2 *Black. Rep.* 1239. 2 *Com. Dig.* 84, 85. Baron and Feme. F. 1. *Dub.* edit. *Anon. Com. Rep.* 31, 32. *Oglander* v. *Barton,* 1 *Vern.* 396. *Bond* v. *Simmons,* 3 *Atk.* 20, 21. and some other authorities, were cited.

It seems to be a principle well settled, and about which there has been little or no dispute, that chattels real belonging to the wife when a *feme sole,* belong to the husband, in her right, after the coverture. If the husband survive the wife, they belong to him; if, however, the wife survive, she has them. As to personal chattels, not in possession, otherwise called *choses in action,* the law is somewhat different. In all cases, they belong to the wife, if not reduced to possession during the life of the husband. I speak now of bonds, notes and other debts uncollected, without any judgment on the part of the husband and wife, to recover them. If there have been a judgment only, without any satisfaction of the same, and either the husband or wife die, I apprehend, it has been more of a question, to whom this judgment belongs. It has been claimed in *Great-Britain,* that it shall be considered as the estate of the husband. If he survive the wife, that it shall be his property; if he do not survive, that it shall go

to his executors and administrators. In the case cited by the counsel for the defendant from the first volume of *Mod. Rep.* p. 179. it was determined, that " where judgment had been recovered by husband and wife, and the wife died, that the debt shall survive to the husband." The court, indeed, went so far as to say, that " by the judgment, the debt became his own debt, due to him in his own right." This, however, was an *obiter* opinion, not necessary to have been given in the cause. In the case of *Obrian* v. *Ram,* 3 *Mod. Rep.* 139. referred to also by the counsel for the defendant, it was determined, that where judgment had been recovered against the husband and wife, for her debt, in case of the death of the wife after such judgment, that the debt should survive to the husband.

It was argued by Sir *Bartholomew Shower,* in the case reported in *Comyns's* reports, pages 31, 32. and cited by the counsel for the plaintiffs, " that by the recovery of a judgment in favour of the husband and wife, for a debt due to the wife, when *sole,* the matter passed *in rem judicatam,* and that it belonged solely to the husband." *Holt,* Ch. J. however, did not agree to this doctrine, but said, " the judgment is joint, and for that reason, it shall survive ; if the husband outlive the wife, he shall have the benefit of it ; if the wife outlive the husband, she shall have the same benefit." This opinion of lord *Holt* is very clearly the better opinion, as will appear by the cases cited by the counsel for the plaintiffs. *Comyns,* in his Digest, so lays down the principle. He also says, in his second volume, page 84. referred to by the counsel for the plaintiffs ; " if an obligation be given to the husband and wife, they are *joint-tenants* of it, and it survives to the wife ;" or makes use of words to that effect.

Such, then, being the law as to this subject, it follows, I think, that if this judgment, in which they are jointly interested, be immediately turned into land, they would be, in the same manner, jointly interested in the land, as they were in the judgment. I presume there is no decision to be found in the books of reports on this precise point : I mean, on the point now in question. In *Great-Britain,* as well as

in most, if not all, of the *United States*, the mode of appraising, and setting off lands on an execution, as is practised in this State, is wholly unknown. A decision, therefore, in point, is not to be expected, except it be in our own courts. And I know of none that has taken place here. From decided cases, however, relative to the interest of the husband, in the property of the wife, brought by the marriage, or accruing after, as well as from the general principles of law on the subject, a deduction may be made applicable to the point in question. I think, as above stated, the better opinion is, from all the cases, that a debt due to a *feme sole*, being reduced to a judgment after her coverture, becomes the joint property of the husband and wife ; and in case of the death of either, becomes the property of the survivor. On general principles, also, I think we should say, that such a debt, while it rests in judgment, is the property of both. As has been observed, a *chose in action* belonging to the wife before marriage, does also, while it remains in *statu quo,* belong to her after the marriage. If it be reduced to possession, that is to say, if it be converted by the act of the husband, or by operation of law, into another species of chattels, as by turning it into money, or any other tangible chattel, it then becomes his sole property. Indeed, if a bill of sale of personal property be made to the wife alone, in lieu of the *chose in action,* this property will belong to him. But if a deed of real estate be given to the wife alone, or to the husband and wife jointly, in lieu of the *chose in action,* in the one case, the estate will belong to the wife alone ; in the other, to her and her husband jointly. But until reduced to possession, in whatever shape it is, still it is a *chose in action.* If a judgment be obtained on it, this does *not* reduce it to possession. A suit may be brought on this very judgment, in order to obtain a satisfaction of it ; in other words, to reduce it to possession. Sir *William Blackstone*, in the second volume of his commentaries, speaking of reducing a *chose in action,* to a *chose in possession,* by means of a suit, says, " The possession can only be given me, by legal judgment and *execution.*" Let these principles be now applied to

the case under consideration. By the mere recovery of the judgment, as has been observed, this debt, originally due to the wife, is not reduced to possession. It is still a debt uncollected, but, by operation of law, due to the husband and wife, instead of being due to the wife alone. That it is so due, appears by the authorities which have been referred to, as well as by the form of the judgment, which is, " that *they* do recover," &c. If this judgment should be satisfied, by payment of money, or by receiving any other personal property for it, (not being a *chose in action,*) this property will, of course, belong to the husband. This will be so, inasmuch, as the law says, that all personal property in possession, once belonging to the wife, vests in the husband absolutely. If, however, as in the present case, this judgment be, by operation of law, turned into real estate, the husband will not be entitled to it, any further than he was interested in the judgment. The real estate of the wife does not belong to him, but is hers absolutely, subject, indeed, to his right of enjoyment during the coverture, or, as the case may be, during his life, if he should survive her.

The execution, in the present case, being in the name of both, in which they have a joint interest, is satisfied, by appraising and setting off the land in question to the creditors named in it, that is, to the husband and wife. This execution, in point of law, must belong to them both, as much as the book debt, without any intervention on the part of the husband, belonged to the wife. The consequence, I think, is clear, that the lands in question, belong to them jointly. Thus, it appears, that, by fair legal deductions from principles well established, the demanded premises are the joint property of the husband and wife. It follows, then, that the evidence objected to, was properly admitted, and that the charge was correct.

But further, if the judgment be considered as belonging to the wife, in the same manner, as the book debt belonged to her before the suit was commenced ; still, I am of opinion, that the evidence ought to have been admitted. In this point of view, the fee of the land levied on, would be in the

June, 1812.

wife, with a right of enjoyment of the rents and profits, on the part of the husband. The defendant, by possessing it adversely, disseised them both, according to their respective rights. It is stated in the declaration, that the plaintiffs were *seised* of the premises, not that they were seised in fee. The land being set off to the *creditors*, in the execution ; the husband and wife may hold the same, as the law authorised them to hold it.

Upon the whole, I am clearly of opinion, that there is no ground for a new trial.

In this opinion, the other Judges severally concurred.

New trial not to be granted.