John W. Means & others *vs.* Catharine Welles & others.

The *St.* of 1841, *c.* 20, makes the evidence of cohabitation by a man and woman, as married persons, competent evidence of their marriage, as well on the trial of a writ of right, when it is necessary to prove the fact of the demandants' marriage, as in other hearings before a court.

A. and S., his wife, and B. and C., who was alleged to be his wife, joined in a writ of right, demanding certain lands in right of the wives: On the trial, the marriage of B. and C was not proved, and they were permitted, on their motion, to become

nonsuit, and A. and S. obtained a verdict for S.'s portion of the demanded premises. *Held*, that the nonsuit was rightly permitted.

A writ of right, in which the demandant counts on the seizin of D., may be amended by counting on the seizin of E., who was last seized, and from whom the estate descended to the demandant.

When part of the heirs enter on land that descends to them, their entry is presumed to be according to their legal title, and it enures to the benefit of all, so that all are seized, unless those who enter claim adversely, and oust the others.

THIS was a writ of right, brought by John W. Means and Sophia R. Means, his wife, and William B. Cushing and Catharine E. Cushing, his wife, and the action was commenced on the 10th of October 1845. The first count demanded of the tenants two undivided seventy second parts of a messuage and appurtenances, situate on Union Street in Boston, which the demandants claimed in equal portions, as the right and inheritance of the said Sophia R. and Catharine E., alleging that, within forty years last past, William Eustis, the great uncle of said Sophia R. and Catharine E., was seized of the demanded premises, in his demesne as of fee, &c. and that from said Eustis, for that he died without issue, the right to two seventy second parts of said premises descended to Benjamin Welles, as the son of Catharine Welles, widow of Ebenezer Welles, and sister of said Eustis; that the heirs of said Eustis were two brothers, and the heirs of two sisters, of whom said Catharine Welles was one; that the heirs of said Catharine Welles, at the time of the decease of said Eustis, were nine children, including the said Benjamin Welles; that from said Benjamin the said two seventy second parts of said demanded premises descended to the said Sophia R. and Catharine E., as the only children and heirs at law of the said Benjamin; and that the tenants had deforced the demandants. The demandants further alleged, that on the 31st day of December 1839, and before that time, and since, and until the commencement of this suit, the said Sophia R. and Catharine E. were married women.

The second count demanded of the tenants two undivided two hundred and forty second parts of a messuage and appurtenances, situate on Portland Street in Boston, which they claimed as the right and inheritance of the said Sophia R

and Catharine E., alleging that, within forty years, Catharine Welles, widow of Ebenezer Welles, and grandmother of the said Sophia R. and Catharine E., was seized of one undivided eleventh part of the aforesaid tenements and appurtenances, in her demesne as of fee, &c. and that from said Catharine Welles the right to two undivided two hundred and forty second parts of said tenements and appurtenances descended to Benjamin Welles, one of the eleven children of the said Catharine Welles, and from said Benjamin the said right to his share descended to the said Sophia R. and Catharine E., his only children and heirs at law, and whereof the tenants had deforced them. It was also alleged, as in the first count, that the said Sophia R. and Catharine E., before and on the 31st day of December 1839, and until the commencement of this action, were married women.

At the trial before *Wilde*, J. it was admitted that Ebenezer Welles died seized of a certain estate situate on Portland Street, as described in the demandants' writ, in the year 1812, leaving a widow, Catharine Welles, and eleven children, six sons, (one of whom, Benjamin, was the father of the female demandants,) and five daughters, who are the tenants in the present suit; that said Benjamin Welles, father of said demandants, conveyed to his mother, Catharine Welles, in 1816, all his right, title and interest in said estate, being one undivided eleventh part thereof; that said Catharine Welles died intestate, in 1818; and that said Benjamin Welles died in 1837.

The demandants, to maintain their action, called two witnesses to prove that said Sophia R. and Catharine E. were married women on the 31st of December 1839. These witnesses testified, that John W. Means and said Sophia R. cohabited together as man and wife, in 1837, but that neither of the witnesses was present at their marriage. They also testified that said Catharine E. was married, in 1837, to one Hastings, who was still alive; but the counsel for the demandants offered no evidence of a dissolution of that marriage, or the formation of another marriage contract with said

William B. Cushing, other than the fact of cohabitation. To all this testimony the counsel for the tenants objected.

The judge ruled that the evidence of the marriage of John W. Means and said Sophia R. was sufficient, but that the evidence of the marriage of William B. Cushing and said Catharine E. was not sufficient; whereupon the counsel for the demandants moved for leave to become nonsuit as to said Cushing and Catharine E. The tenants' counsel objected, on the ground that, in a writ of right, the demandant cannot discontinue the action, but that judgment must be rendered either for the demandant or tenant. The judge ruled that a nonsuit might be entered, as moved for, and it was entered accordingly.

It was also admitted, that said William Eustis died in February 1825, intestate and without issue; that a fourth part of his estate descended to the children of his deceased sister, the aforesaid Catharine Welles, by right of representation; that the aforesaid Benjamin Welles was never in actual possession of the demanded premises, but that the tenants have been in possession of the estate in Portland Street since 1818, and of the estate in Union Street since the death of said William Eustis, by receiving the rents and profits of the same. It was also admitted, that two of the other sons of said Catharine Welles were dead; but no evidence was offered to show when or where they died, whether intestate and without issue, or not.

Upon the foregoing evidence and admissions, the counsel for the tenants moved for judgment, for the following reasons: "1st. Because there was no evidence of the demandants' marriage on the 31st day of December 1839, and consequently there was no disability by which this writ can be maintained, pursuant to the Rev. Sts. c. 101, §§ 51, 52. 2d. Because the demandants count on the seizin of their grandmother and grand uncle, when, in fact, their father, Benjamin Wells, lived nineteen years after the death of the grandmother, and twelve years after the death of the uncle; consequently, they did not make themselves heirs to the

person last seized, and therefore cannot maintain their writ of right. 3d. If the court permit the demandants to amend their writ, and count on the seizin of Benjamin Welles, their father, the evidence does not support the allegation; for he was not seized of either of the estates claimed in the writ, and therefore they cannot maintain their writ of right."

The judge permitted the counts to be amended, by declaring on the seizin of Benjamin Welles. And he instructed the jury, that the evidence that John W. Means and the said Sophia R. lived together as man and wife, was *prima facie* evidence, from which the jury might infer that they had been before married. He also instructed the jury that this action might be maintained on the amended declaration, counting on the seizin of Benjamin Welles, the demandants' father; there being no evidence of his being disseized after the death of his mother, or that he had been ousted by the tenants; and that the entry of one of several heirs gives a seizin to the other heirs, unless the party entering claims adversely to the other heirs.

A verdict was taken for John W. Means and Sophia R. Means, for one eighty eighth part of the Union Street estate, and one two hundred and forty second part of the Portland Street estate, subject to the opinion of the whole court upon the rulings and instructions of the judge.

*Sparhawk*, for the tenants.

*F. W. Sawyer*, for the demandants.

HUBBARD, J. It was contended that there was no disability on the part of Sophia R. Means and Catharine E. Cushing, two of the demandants, to prosecute their suit prior to January 1st 1840, on the ground that there was no legal evidence of their marriage, at and prior to that time, to John W. Means and William B. Cushing, the other two demandants, who sue in right of their respective wives.

In regard to William B. Cushing and Catharine E. Cushing, the ruling of the judge, at the trial, as to the sufficiency of the evidence to prove their marriage, was not objected to; but as to the proof to support the marriage of Sophia R.

Means, it was argued that mere cohabitation·was not a species of evidence, sufficient for that purpose, to sustain a writ of right.    But we are aware of no distinction, as to the amount of proof necessary to establish a marriage in any one case more than another, where marriage is a fact to be proved in order to sustain an action.    In a suit against a man for supplies furnished to a person alleged to be his wife, his admissions are evidence of the fact of marriage, as well as other acts.    But where a person is plaintiff, and seeks to establish the proof of his marriage, he must do it by satisfactory evidence, whatever is the nature of his action, and his admissions will not be received in proof of it.    In the present case, the cohabitation of John W. Means and Sophia R. Means, as man and wife, was proved as existing in 1837 ; and this was sufficient to warrant the jury to infer their previous marriage. The provision in *St.* 1840, *c.* 84, that on the hearing of *an application for divorce*, evidence of cohabitation of the parties, as married persons, should be received as competent evidence for consideration whether a marriage existed or not, was extended, by *St.* 1841, *c.* 20, "to all cases where it shall become necessary to prove the fact of marriage, in any hearing before any court in this Commonwealth."    And before these statutes, a marriage might be presumed from long cohabitation. *Inhabitants of Newburyport* v. *Inhabitants of Boothbay,* 9 Mass. 414.    *Hammick* v. *Bronson,* 5 Day, 290.

On the motion to discontinue, as against Cushing and wife, the tenants objected that it ought not to be granted, but that they were entitled to a verdict and judgment against them ; and they relied on *Haskell* v. *Whitney,* 12 Mass. 47, and *Locke* v. *Wood,* 16 Mass. 317.    In the first of those cases, the parties had agreed to refer the action and all demands ; after which the plaintiff moved for leave to discontinue. The court held that the agreement to refer, being entered on the docket, was not a mere agreement *in pais,* but was a vested right in the defendant to proceed, if he should see fit, agreeably to the forms of the rule, and that the plaintiff could not afterwards become nonsuit, or discontinue, without the

consent of the defendant.   In the other case, after a verdict was returned, but before it was recorded, the plaintiff moved for leave to discontinue ; but the court refused to grant it, as it might be dangerous to establish such a precedent.   Those cases proceeded on the ground of a right obtained by the defendant, of which the plaintiff cannot, at his own pleasure, deprive him.   And for a like reason it is provided in the Rev. Sts. *c.* 96, § 24, that " after a demand is filed in set-off, the plaintiff shall not be allowed to discontinue his action, unless by consent of the defendant."   But it is held by the court, that where a discontinuance is not a matter of right, it may be granted by the court on motion, and on cause shown ; and this has been the state of the law for a long period, both in England and in this country.   Com. Dig. Pleader, W. 5. *Philips* v. *Echard,* Cro. Jac. 35.   The leave to discontinue, in the present case, was within the discretion of the presiding judge; and we cannot doubt, upon the facts proved, but that it was rightly exercised.   See Stearns on Real Actions, (1st ed.) 81.

An objection was also taken, that the demandants counted on the seizin of their grandmother or grand uncle, and not on that of their father, who survived them ; and therefore they did not make themselves heirs of the person last seized.   On leave being given to amend their writ, which was objected to, they counted on the seizin of their father.   That a writ of right may be amended is settled by the cases of *Holmes* v. *Holmes,* 2 Pick. 23, and *Overseers of the Poor of Boston* v. *Otis,* 20 Pick. 38.

In the present case, there is no evidence tending to show an ouster by the tenants.   They entered as heirs of the person last seized, and their entry is presumed to be according to their legal title; so that the entry of one enures for the benefit of all the heirs.   *Shumway* v. *Holbrook,* 1 Pick. 114. *Barnard* v. *Pope,* 14 Mass. 438.   *Marcy* v. *Marcy,* 6 Met. 371.   The demandant Sophia R. Means, then, was actually seized of the demanded premises, within the authority of these cases ; and being under coverture at the time when the

statute bar to the prosecution of a writ of right (Rev. Sts
*c.* 101, §§ 51, 52,) went into effect, her husband and herself
are at liberty now to maintain this action in her right.

*Judgment on the verdict.*