Gulfport Cotton Oil, Fertilizer & Manufacturing Com-
pany v. Charles W. Reneau.

[48 South. 292.]

Statute of Frauds.  *Code* 1906, § 4775 (*d*).  *Agreement not to be per-
formed within one year.  Contract of employment to begin in
future.  Memorandum.  Several writings.  Case.*

Under the statute of frauds, Code 1906, § 4775 (d), providing that
an action shall not be brought whereby to charge a defendant or
other party upon any agreement which is not to be performed
within the space of one year from the making thereof, unless the
promise or agreement, or some memorandum or note thereof,
shall be in writing and signed by the party to be charged there-
with, or some person by him or her thereunto lawfully author-
ized:—

(*a*) A verbal contract of employment to begin in the future and
continue for one year thereafter is within the statute; and

(*b*) A memorandum of a contract, to make it enforceable, must in-
clude all the material matters of the agreement, so that resort to
parol testimony will be unnecessary, except to show the situation
of the parties and the application of the terms used in the writ-
ing to the subject-matter; and

(*c*) The memorandum must be signed as provided in the statute;
and

(*d*) While the memorandum may consist of several distinct writ-
ings, and all of them need not be signed by the party to be
charged, they must so relate that the one signed by the party to
be charged can be held to be an approval of the unsigned ones
in order to bind him to the terms of the contract set forth in
them; and

(*e*) The statement in a letter from defendant, responding to one
from the plaintiff detailing the terms of the unenforceable verbal
contract of employment, in these words, "As for the talk I had
with you when you applied for the situation, I expected much
from you; that is why I offered you a large salary," was not a
consent to the terms of the contract as detailed in plaintiff's
letter, and the two writings did not take the case out of the
statute; and

(*f*) The statute of frauds does not require that the writing shall
be executed at any special time before it is offered in evidence.

FROM the circuit court of Harrison county.

HON. WILLIAM H. HARDY, Judge.

Reneau, appellee, was plaintiff in the court below, and the Gulfport, etc., Co., appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*Money & Graham, Flowers & Whitfield* and *George W. May,* for appellant.

The court below seems to have proceeded upon the idea that a verbal contract for more than a year is enforceable if the plaintiff does not depend altogether upon spoken words; and that he can recover if he can offer any corroborative written evidence that a contract was made. But the statute requires that the contract itself shall be in writing or some memorandum thereof sufficient in itself to evidence the contract in all its terms. *Waul v. Kirkman,* 27 Miss. 828; *McGuire v. Stevenson,* 42 Miss. 724, 730; *Frank v. Eltringham,* 65 Miss. 281, 3 South. 655.

The letters regarded for the present as being sufficiently connected to be treated as one writing do not contain the terms of the contract nor of any contract. It does not appear from these writings (1) what Reneau was to do, (2) where he was to work, (3) by whom he was to be paid, (4) how long he was to work, (5) whether his services were to be satisfactory to his employer, (6) whether he was to prove himself to be an expert machinist, (7) when his services were to begin. Not one of the substantial terms of the contract is plainly shown by these writings.

The statute requires the memorandum necessary to save a parol contract of this kind to be "signed by the party to be charged." Now the only writing which mentions the contract in the remotest way is the letter signed by Reneau of date May 18, 1907. It is not signed by Van Winkle, the president of the defendant corporation, the party to be charged. Van Winkle

did not write this letter; he did not write out these references to the contract; he did not sign any writing containing these references.    But it is insisted by the appellee that he is to be held to have, in effect, signed this writing simply because he answered the letter, as they say, and did not question the correctness of the reference contained in it.    This is far-fetched.

We recognize the holdings of the courts to the effect that the writings may be in two or more papers and that the signature of the party charged need not be attached to the paper containing the terms of the contract.    These holdings have invariably been made so far as we have been able to learn, in dealing with papers written while negotiations were going on about the making of a contract.    They have most frequently been cases in which it appeared that the offers were made in one writing and acceptance in others.    One referred to the other and was based upon the other and got its meaning from the other. They are cases where it was manifestly intended that one should refer to the other and where it was intended by the party charged to adopt the contents of the writing referred to just as if it were incorporated in the paper signed by him.    There are cases, too, where the writing referred to is physically attached to the one signed.

But the case at bar is entirely different.    Reneau had been discharged.    He wrote a letter of complaint to the man who had employed and discharged him.    At the end of his letter he mentioned the fact that he had a contract "by the year at a stipulated salary of $2,500 by the year."    There was no occasion for Van Winkle to answer the same and say whether this reference to the contract was correct.    It made no difference at that stage of the transaction whether the reference was correct.    Van Winkle was not asked to say whether the statement in Reneau's letter was correct; the situation did not require him to express himself; and it cannot be assumed that he did intend to express himself.    How could it make any difference

to him whether Reneau correctly set out the terms of the contract or not? The contract was ended.

"It is not necessary that the memorandum should consist of a single instrument. Several and distinct writings may be construed together as containing all the terms of the contract though only one of them be signed by the party to be charged. But such separate writings must expressly refer to each other or be so connected physically or otherwise, as to show unmistakably that they relate to the same transaction. The general rule is that it is not competent to connect the several papers by parol, such evidence being admissible merely to identify one writing to which reference is made in another." 29 Am. & Eng. Ency. Law, 850.

The following are some of the cases decided by this court in which two or more writings have been dealt with: *Waul v. Kirkman,* 27 Miss. 826 *et seq.; Fisher v. Kulm,* 54 Miss. 480; *Jelks v. Barrett,* 52 Miss. 315, 322, 323; *McGuire v. Stevens,* 42 Miss. 315, 322, 323; *Rector Provision Co. v. Sawyer,* 69 Miss. 235, 13 South. 623; *Wilkinson v. Taylor etc., Manufacturing Co.,* 67 Miss. 231, 7 South. 356; *Frank v. Eltringham,* 65 Miss. 281, 3 South. 655.

We may rid ourselves of all complications and make it easy to see whether the contract sued on here is within the statute of frauds, simply by ignoring the oral testimony altogther, as to what the contract was, and examine the writings offered for the purpose of determining whether they embody the substantial terms of the agreement. When we do this we have nothing left to show the terms of the agreement, as is conceded by counsel for the plaintiff, except the statement in the letter of May 18, 1907, written by Reneau: "My contract with you was fixed by the year at a stipulated salary of $2,500 by the year and you offered as a further inducement that after removing the plant to Columbia you would make it more interesting to me by letting me take stock in the business;" and the statement in

the letter of May 20 written by Van Winkle: "As for the talk had with you, when you applied for the position, I expected much from you, that is why I offered you a large salary." Consider these two statements together and it cannot be seen what the contract was.

*T. A. Hardy* and *L. Brame,* for appellee. ·

It is always competent to show the situation and surroundings of the parties and other particulars in order to apply and construe a written contract. This is especially true where the contract is evidenced by several writings; as in the case of an agreement made by correspondence. The rule of admitting such testimony is one of necessity, and was in force long before the statute · of frauds was enacted, and has been universally recognized and applied since the enactment of the statute. Neither this statute nor the rule forbidding parol evidence to vary or contradict a writing, excludes such testimony.

"Parol evidence is inadmissible to complete or vary an insufficient writing. But the surrounding circumstances may be shown by parol, and facts established from which the relation of several writings may be inferred." 12 Enc. of Ev. 7, citing among other cases *Hagan v. Domestic Sewing Machine Co.,* 9 Hun, N. Y. (16 Sup. Ct. R.) 73, and also *Beckwith v. Talbot,* 95 U. S. 289, which is a leading case cited in nearly all the authorities. See also our own cases of *Wilkinson v. Taylor Mfg. Co.,* 67 Miss. 231, 7 South. 356; *Tufts v. Greenwald,* 66 Miss. 360, 6 South. 156. In the case of *Beckwith v. Talbot* above, the supreme court of the United States uses the following language:

"It is undoubtedly a general rule that collateral papers, adduced to supply the defects of signatures of a written agreement under the statute of frauds, should, on their face, sufficiently demonstrate their reference to such agreement without the aid of parol proof. But the rule is not absolute. *Johnson v. Dodgson,* 2 Mees. & W. 653; *Salmon Falls v. Goddard,*

14 How. 446.   There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof.   If there is ground for any doubt in the matter, the general rule should be enforced. But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud."

In the light of this well established and reasonable rule, look at the facts.   Van Winkle was the president and principal owner of an oil mill.   Reneau, the appellee, was an oil mill man, his business being to manage oil mills, and he was skilled and experienced in that business.   Van Winkle desired to employ him to manage his mill, and did so at an agreed salary of $2,500 per annum.   Reneau went to work under the agreement and worked nearly a month, when, without cause, he was discharged.   Thereupon on April 18, 1907, in answer to a letter of that date discharging him, he wrote Van Winkle a rather lengthy letter about this matter, among other things, stating therein as follows:

"My contract with you was fixed by the year, at a stipulated salary of $2,500 by the year and you offered as a further inducement that after removing the plant to Columbia, you would make it more interesting to me, by letting me take stock in the business."

In this letter he also asked for "a settlement."   Two days later Van Winkle replied directly to this letter, making some complaint of the manner in which Reneau had discharged the duties, and among other things used the following language:

"As for the talk I had with you when you applied for the position I expected much from you.   That is why I offered you a large salary."

He also stated in answer to the request for a settlement, that as soon as Mr. Danee would return "you can have an immediate settlement."

These letters bear inherent evidence of a reference, one to the other.   No reasonable mind, after reading the whole of the

letters and knowing the relation and situation of the parties, would reach any other conclusion. The parol proof, which the court below admitted, was not for the purpose of adding to the terms of the agreement as set forth in this correspondence, but simply to apply the references in the letters, the one to the other, and to show the situation and relation to the parties and the surrounding circumstances.

In the case of *Wilkinson v. Taylor Mfg. Co.,* 67 Miss. 231, 7 South. 356, Judge CAMPBELL, speaking for the court on this subject, uses the following language:

"If the paper signed by the party to be charged makes such reference to the other writings as to enable the court to construe them together as constituting all the terms of the bargain, parol evidence is admissible to identify the paper referred to and apply the references. 1 Benji. on Sales, secs. 220, 221; Reed on Stat. of Frauds, sec. 341 *et seq.*"

In *Jelks v. Barrett,* 53 Miss. 315, cited by opposite counsel, a great deal of parol testimony was admitted for the purpose of showing the existence and identity of certain maps and other papers and what was done with them, and the relation and situation of the parties, and the court in that case held that the parol proof was competent and sufficient to connect the writings and apply the reference. In answer to the contention that this evidence was incompetent and in commenting on the testimony, the court among other things used the following language:

"That there should be some conflict and some presumptions necessary to be indulged, is unavoidable."

This case is cited by opposite counsel, but we consider it clearly an authority for our contention, as we think the principles applied to the facts are decisive of the question under discussion. There a great deal more parol testimony was admitted and considered than was offered in this case.

In the leading case of *White v. Breen,* 106 Ala. 159, 32 L. R. A. 127, the supreme court of Alabama, in a remarkably clear and philosophical discussion of this question, among other things, uses the following language:

"We are of opinion that when all the writings adduced, viewed together, in the light of the situation and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter and constitute several parts of one connected transaction, so that the mind can come to no other reasonable conclusion, from the evidence so afforded, than that they were each written with reference to those concurrent or preceding, then there is such a reference of the one to the other as satisfies the rule, although reference in express terms does not appear. The rule is one founded in reason; and when, as practical men, we look at the writings, and see, inhering in them evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such case a direct reference of the one to the other, within the meaning of the law. The application of the principle to the facts of this case will illustrate our meaning. The case of *Beckwith v. Talbot,* 95 U. S. 289, 24 L. Ed. 496, aptly illustrates it.

As we understand the rule, it is not necessary that the reference between the writings shall be direct, or in express terms. It is sufficient, if, in viewing the whole of the correspondence, it reasonably appears that it relates to "one general transaction."

It must not be forgotten that the appellee went to work under the contract and worked nearly a month, and this practical construction by the parties is to be considered as an aid in upholding the agreement. As another aid, we invoke the principle expressed in the maxim *ut res magis valeat, quam pereat,* which requires that the contract be upheld, rather than defeated, if this can be done by reasonable construction and by the application of well-known presumptions and implications of law.

Another principle which has direct application is that expressed by the maxim *id certum quod certum reddi potest.* These principles are as old as common law itself. They were in force long before the statute of frauds was enacted in England, and the statute has always been construed and applied in

the light of these and other well-known principles of the common law.

The laborer is worthy of his hire.

Argued orally by *J. N. Flowers,* for appellant, and by *T. A. Hardy,* and *L. Brame,* for appellee.

FLETCHER, J., delivered the opinion of the court.

On the 20th day of April, 1907, appellee entered into a verbal contract with appellant, acting by one Van Winkle, its president, to take charge of the company's oil mill in Gulfport as superintendent of the operating department. Appellee held himself out as a skilled and experienced man in such matters, and Van Winkle agreed to pay him an annual salary of $2,500; the term of service to begin on April 24th and, according to appellee's contention, to continue for one year. There were certain other inducements and representations dealing with appellee's status and privileges, in case the plant should be removed to Columbia, which we need not here notice in detail. Appellee on the 24th of April entered upon the discharge of his duties according to the terms of his contract, and was shortly thereafter discharged by Van Winkle without just cause. He was paid for the short time during which he worked, reduced his damages as much as possible, as he was bound to do under the law, and brought suit for the difference between what he had been able to earn during the year and the $2,500 which Van Winkle had promised to pay him. Under a peremptory instruction from the court, Reneau was given judgment for $1,350, and this amount is admittedly correct, provided any liability at all exists.

It will be observed that the contract was a verbal one, made on April 20th, to begin on April 24th, and to continue for one year, and is, therefore, unless affected by the letters to be hereafter adverted to, within the inhibition of that clause of the statute of frauds which provides that an action shall not be brought whereby to charge a defendant or other party upon any agree-

ment which is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith. Indeed, the record before us contains the following recital: "It is admitted by the plaintiff that the contract testified to by the plaintiff is within the statute of frauds and non-enforceable in this state, unless the letters filed as exhibits to the declaration in said case and the letters introduced in evidence in this case are sufficient memorandum to take the same out of the operation of the statute of frauds, together with any competent oral evidence introduced in said case."

It will thus be seen that the case turns entirely upon the question whether the letters introduced, taken together, contain such a memorandum or note of the contract as will satisfy the statute. The letters referred to were written under these circumstances: After appellee had been discharged, he addressed a letter to Van Winkle, protesting against the treatment he had received, explaining the cause of the unsatisfactory condition of the product of the mill, and reminding Van Winkle of the fact, and at least some of the terms, of the contract. This letter was dated May 18th, and, among other things mentioned, Reneau refers to the fact that he had made no misrepresentation when he had held himself out as thoroughly understanding the oil mill business. The letter then recites: "My contract with you was fixed by the year at a stipulated salary of $2,500 by the year, and you offered as a further inducement that, after removing the plant to Columbia, you would make it more interesting to me by letting me take stock in the business." On May 20th Van Winkle addressed a letter to Reneau, which does not in so many words acknowledge receipt of Reneau's letter, but does discuss the questions raised by Reneau. Among other things mentioned in this letter is this expression: "As for the talk I had with you when you applied for the position, I expected much from you. That is why I offered you a large salary."

It is insisted on behalf of the appellee that these two letters,

taken together, satisfy the statute, and on behalf of the appellant that they come far short of doing so. Appellant's attack upon the sufficiency of these letters may be said to have three aspects: First, that the letters cannot be connected, since there is no direct reference in one to the other; second, that, if considered together, they do not set out all the terms of the contract, so as to render unnecessary any resort to parol evidence; third, that the letter signed by Van Winkle does not sufficiently show the author's assent to and adoption of the statements made in Reneau's letter.

We do not think it necessary in this case to devote much time to the first two points. Suffice it to say that we think Van Winkle's letter bears such internal evidences of having been written in reply to Reneau's that their connection sufficiently appears, although there is no express acknowledgment in the one of the receipt of the other. We observe, on the second ground, that there is some force in the contention that the letters, when taken together, do not furnish a complete memorandum of the contract, since nothing is better settled than that the writing must include all the material features of the agreement, so that no resort to parol testimony is necessary, further than to show the situation of the parties and the application of the terms employed in the writing to the subject-matter under consideration. It may well be doubted whether these letters measure up to this requirement; but we do not feel called upon to decide this question.

We come to the third, and, as we think, controlling, feature of this case. Of course, by the very terms of the statute the memorandum must be signed by the party to be charged. In this case, before appellant can be held, it must appear that Van Winkle has approved, assented to, and adopted as his own the statements made in Reneau's letter as to the terms of the contract. We, of course, readily assent to the well-understood principle that the memorandum may consist of several distinct writings, provided they are so related that the particular paper

signed by the party to be charged can be held to be an approval
of other documents in which the terms of the contract are set
forth, even though such other writings are signed by others.
The reports abound in cases of this sort.    But the question here
is whether the case at bar falls within this principle.    It must
be remembered that these letters are written after the breach
of the contract.    This fact is of value, not because as a matter
of law the memorandum must be executed before the making of
the contract, or contemporaneous therewith, for the authorities
are well enough agreed that the memorandum may be executed
after the breach, but as an important factor in determining
what effect shall be given to the language employed.    We can
readily understand that, when parties are engaged in negotiat-
ing for a contract, any reply which one may make to a proposal
of the other must be deemed as responsive thereto, since the re-
ply marks a step either forward or backward in the progress of
the negotiation.    But it is a different matter when a contract
already made and breached is sought to be confirmed by an in-
terchange of letters.    In such a case, when the one not sought to
be charged states the terms of the contract, the other must mani-
fest his assent thereto in some manner which clearly evidences
his acquiescence in the statement.    We are not to be understood
as holding that he must sign with the intent to charge himself
under the statute of frauds.    We agree that his intention is
immaterial.    But he must adopt his adversary's statement.

We cannot think the letter written by Van Winkle under date
of May 20th measures up to this requirement.    Reneau's let-
ter, we may concede, states the contract.    To this Van Winkle
merely replies that, "as for the talk I had with you when you
applied for the position," etc.    Can this be held as the equiva-
lent of saying," I agree that you have stated all the terms of the
contract correctly?"    We think not.    True, Van Winkle enters
no specific denial; but he was not called upon to deny.    Had
he made no reply to the letter, he would not have been bound.
What he did sign does not show his assent to the terms stated

by Reneau. It can mean nothing more than that, conceding what Reneau said to be true, he (Van Winkle) had not secured the results which he expected. It neither affirms nor denies the correctness of Reneau's declaration. It does no more than to waive his version aside, without committing the writer to its terms. It refers to "a talk;" but it does not say that "you have represented this 'talk' correctly." It cannot, for the purpose of satisfying the statute of frauds, be given the effect of a plea in confession and avoidance; nor can a person bring himself within the statute by conduct such as would operate as an estoppel in many other cases. In this case the statute is far from being satisfied.

It does not with sufficient certainty appear that Van Winkle assented to the terms of the contract, and we cannot enforce it. We are content with the authorities cited by counsel, and do not reproduce them here.

*Reversed, and cause dismissed.*