LUDKE ELECTRIC COMPANY, INC. *v.* VICKSBURG TOWING
COMPANY.

No. 41714          March 13, 1961          127 So. 2d 851

496

*Teller, Biederharn & Rogers,* Vicksburg, for appellant.

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellee.

RODGERS, J.

The Ludke Electric Company filed its suit in the County Court of Warren County against the Vicksburg Towing Company in which it demanded judgment in the sum of $1,421.35 alleged to be due it because of an order given it by the Vicksburg Towing Company, for certain parts of a pneumatic propulsion control to be used aboard the M/V Ouachita. The defendant answered and set up as defense Section 268, Mississippi Code, 1942, and moved the court to hear this defense separately as is permitted by Section 1475.5, Mississippi Code, 1942. The county court heard the issue joined on the Statute of Frauds and entered a judgment in favor of the defendant, Vicksburg Towing Company. The case was then appealed to the Circuit Court of Warren County, where an order was entered sustaining the judgment of the county court. The case was then appealed to this Court.

It appears from the evidence in this case that the Vicksburg Towing Company is a river boat towing company and owns a boat designated as the M/V Ouachita, and that the Captain, or engineer of this boat, is Captain George T. Wilkerson. It further appears that there was in use on the boat certain pneumatic propulsion control machinery which had become worn. The captain made

out a requisition for these parts, addressed to Mr. M. L. King, who is the manager of the Towing Company, and has an office in Vicksburg. This written memorandum did not state the price for any of the parts. Mr. King directed the captain "to see if he could get some of the parts from Ludke Electric Company." It was necessary to order the parts from three different manufacturing companies: The Allis-Chalmers Manufacturing Company; General Motors, and Dillworth. Captain Wilkerson took his requisition and went to the office of the Ludke Electric Company, and contacted Mr. M. D. Clark, who worked for the Ludke Electric Company. Mr. Clark made out an order on the forms of his company for the parts, except that he duplicated the order, since one set of parts were to be used on the Port side of the boat and another set to be used on the Starboard side of the boat. This order to Allis-Chalmers Manufacturing Company did not give the price or cost for any of the listed parts. Mr. A. A. Ludke was present and told the captain that it would take a long time to fill the order. Captain Wilkerson did not know the parts would have to be hand-fabricated. The order of the Ludke Electric Company was then forwarded to the New Orleans office of the Allis-Chalmers Company. In a short time thereafter the Ludke Electric Company got a letter from the Allis-Chalmers Company requesting information with reference to the serial or drawing numbers of the parts. This information was conveyed to the Towing Company, and the Towing Company obtained the numbers from the Allis-Chalmers "parts Book" kept on the boat. There were several communications from Allis-Chalmers Manufacturing Company with reference to the exact serial number of the parts ordered. Finally, the Allis-Chalmers Manufacturing Company advised the Ludke Electric Company that most of these parts were obsolete and out of manufacture, and would necessarily have to be hand-fabricated. Mr. Clark read the letter from Allis-

Chalmers to Captain Wilkerson, who testified that he then told Mr. Clark to "hold up" on the order because the price would be prohibitive and they were going to try to get the whole assembly. Mr. Clark contends that he only wanted him to "hold up" on Item No. 38. Captain Wilkerson testified that he called Mr. Clark later and told him that he would get the parts in a whole assembly from Boston Mill Works and again told him to "hold up" on the order. The Ludke Electric Company never confirmed the order to Allis-Chalmers, although the Allis-Chalmers Manufacturing Company had advised Ludke Electric Company that they were proceeding to manufacture the parts. The manufactured parts were delivered to Ludke Electric Company, and some 20 or 30 days later the invoice was received showing for the first time the cost of the parts. When the Vicksburg Towing Company would not receive the parts, nor pay the bill, the Ludke Electric Company filed suit.

There are two questions of law presented for determination by this Court. First: Does the purchase order, addressed to Mr. M. L. King and signed by George T. Wilkerson, coupled with the purchase order from Ludke Electric Company, and addressed to Allis-Chalmers, constitute sufficient written memoranda to take this transaction out of the Statute of Frauds? Second: Does the fact that these parts had to be manufactured constitute a contract for "service and material," rather than a "sale of goods, wares and merchandise" and is not therefore within the meaning of the Statute of Frauds?

The applicable statute here under consideration is Section 268, Mississippi Code, 1942, Anno., known as the Statute of Frauds. We are dealing with a very old and tried law. The so-called "Statute of Frauds and Perjuries" was introduced and received in the English Parliament on April 16, 1677, and it became Statute 29, Car. II, Ch. 3. Later there was an addition to this statute known as Tenterden's Act which went into effect May

9, 1828, and appears in the statutory law as "Ninth George, IV, Ch. 14." Most of the states of the United States enacted into law statutes similar to the original English Statute.

The appellant in this case earnestly argues that the memorandum called "requisition" or purchase order No. 1836 constitutes a sufficient written memorandum to satisfy the Statute of Frauds and contends that if this single written memorandum does not constitute a sufficient writing to satisfy the statute that the purchase order from Ludke Electric Company to Allis-Chalmers Manufacturing Company, No. 3449, taken together with the requisition is sufficient to comply with the requirements of the Statute of Frauds. The original memorandum signed by Wilkerson is divided into three distinct parts, and it is not contended that the Vicksburg Towing Company intended to purchase all of these parts from the Ludke Electric Company. The contention is that since the memorandum, No. 1836, had written thereon, "Ordered 8-19-58" in two places that this reference was to the purchase order from Ludke Electric Company. This is an assumption and is certainly not clear, because the figures are written by parts purchased from other sources, and since the trial court has held otherwise, we agree. It appears to us that this does not refer to Order No. 3449. It is contended that the notation on the bottom of the order from Ludke Electric Company, No. 3449, "For Vicksburg Towing Company, Inc., P. O. Box 1943, Vicksburg, Mississippi, Purchase Order No. 1836," is a sufficient reference to requisition No. 1836 and, therefore, these two memorandums in writing taken together satisfy the Statute of Frauds. It will be noted that this notation is not on the memorandum signed by the party to be charged, and that there is no notation on the memorandum No. 1836 referring to the order of Ludke Electric Company to Allis-Chalmers.

This Court recognizes the rule set out in Gulfport Cotton Oil, Fertilizer and Mfg. Co. v. Reneau, 48 So. 292, that parol testimony may be resorted to to show the situation of the parties and application of the terms used in a written memorandum, but the memorandum itself must contain all the features of the agreement, and although the memorandum may consist of more than one writing, they must be so related that the memorandum signed by the party to be charged can be held to approve the other documents in which the terms of the contract are set forth.

We agree, therefore, with appellant's premise that the written "memorandum" may consist of one or several writings, as stated in the general law. 49 Am. Jur., Statute of Frauds, Sec. 392, p. 695. The signed memorandum must, however, refer to the unsigned writing either expressly or by internal evidence of subject matter and occasion under such circumstances as to clearly show that the unsigned writing is necessarily incorporated into the signed memorandum. 49 Am. Jur., Statute of Frauds, Sec. 394, p. 699; Borden v. Case (Ala. 1960), 118 So. 2d 751.

This is said to be the true rule and is stated in 49 Am. Jur., Statute of Frauds, Sec. 394, p. 700, as follows: "The true rule, however, imposes the condition that the signed writing must have been written with at least an implied reference to the writing which it is sought to incorporate in the memorandum; otherwise, the signature on the one instrument cannot be regarded as authenticating the other writing. Therefore, it would seem that in order for an unsigned writing not referred to expressly in a signed writing to be deemed incorporated in the signed writing, it should appear that the signed writing is based in part, at least, upon the unsigned writing."

The Reneau case, supra, was cited under this section and our Court has clearly adopted the rule requiring that

the written signed memorandum must make at least an implied reference to the other writing.

This rule is pointed out in Williston on Contracts, revised Edition, Vol. 2, Sec. 581, p. 1671, as follows: "Where some of the papers which it is sought to include are unsigned, it is sometimes said that one paper must refer to the other, or that there must be mutual reference, but this is inaccurate. What is essential is that the signature of the party to be charged shall authenticate the whole of the writing. It is, therefore, necessary to incorporate all the documents into a writing signed by him. It will not be enough to incorporate all into an unsigned writing, or into a writing signed by the plaintiff, and, consequently, it is insufficient and immaterial that such a writing refers to a writing signed by the defendant. What is necessary, then, is that a writing so signed refer to all writings not so signed that are sought to be made a part of the memorandum.

"It is not important in what language reference is made; it is certainly enough if a plain reference is made by a document signed by the party to be charged, whatever its nature, to any other writing."

██ █ There is a considerable difference between a written contract and a written memorandum of an oral contract. The requirement of the Statute of Frauds is met, when a written memorandum has been made by the party to be charged at any time before the action is brought. ██ █ A written contract is the only evidence admissible to show its content, but parol evidence may be admitted to show that the memorandum of a parol contract is inadequate, or inaccurate, and hence does not comply with the statute. There must be a valid oral contract, of which the memorandum is a written statement, and the memorandum must be complete within itself, and cannot be added to or eked but by oral testimony. Williston on Contracts, Revised Edition, Vol. 2, p. 1617, Sec. 567; Hamilton v. Morrison, et al. (Miss.),

146 F. 2d 533; Waul v. Kirkman, 27 Miss. 823. ██ ██ The memorandum must state the name of both parties to the bargain, and it must appear which party is the buyer and which is the seller. Williston on Contracts, supra. Sec. 569, p. 1622; Willis v. Ellis, 98 Miss. 197, 53 So. 498; Frank and Co. v. Eltringham, 65 Miss. 281. And, of course, it must be signed by the party to be charged or his lawful agent. Gulfport Cotton Oil, Fertilizer & Mfg. Co. v. Reneau, supra.

The appellant has cited the general rule set out in 37 C.J.S., Frauds, Statute of, Sec. 199, p. 692, as follows: ''Where the parties have fixed the price, it becomes a part of the bargain and must be stated the same as any other term. Conversely, where the parties have not agreed as to price, and hence price is not one of the essential ingredients of the bargain, it is left to the law to determine what the commodity contracted for is reasonably worth and the price need not be stated in the note or memorandum.'' If we were to accept this to be the true rule, rather than the rule of nudum pactum, which we do not here decide, the written memorandum designated as ''purchase order No. 1836'' is deficient and lacking in two essentials: (1) Identity of the parties. The name Ludke Electric does not appear on the memorandum No. 1836; (2) The property, the subject of the bargain, is not identified. This is evidenced by the fact that many communications were had in an effort to find out what property was sought to be purchased.

██ ██ From the foregoing authorities, we must conclude that the response to the first question presented must be answered in the negative; that is to say, the written memorandum and order taken together do not take this transaction out of the Statute of Frauds. The lower courts were therefore correct in holding that the first transaction comes within the Statute of Frauds. The second question presented has given us considerably more trouble in reaching a solution.

The plaintiff in the court below pleaded, and offered proof to show that after the parties had met and forwarded an order to Allis-Chalmers Manufacturing Company for the parts needed by the Vicksburg Towing Company, that the plaintiff received a letter from Allis-Chalmers stating, ''Our factory has also asked that we notify you that the majority of these parts are of special make. They have not been in manufacture at our plant for at least ten years, and some of the parts have to be hand-fabricated. This will increase the cost not only due to hand-fabrication, but also to the small quantity of pieces.'' The plaintiff claims to have advised the defendant by telephone. Captain Wilkerson claims to have asked the plaintiff to ''hold up'' on the order. The plaintiff claims this order to ''hold up'' referred to a part only of the order. Captain Wilkerson claims that he called the plaintiff a few days later and told them again to ''hold up'' on the order since he could get these parts from another source.

It will be noted from Section 268, Mississippi Code, 1942, that the contract which ''shall not be allowed to be good and valid,'' is ''a contract for the *sale* of any personal property, goods, wares, or merchandise.''

Most of the states of the United States which have adopted the original English Statute of Frauds have almost uniformly held that a contract for ''labor, skill and material'' does not come within the statute.

''It is clear that a contract solely for the services of a person to be paid for in money is not a contract for the sale of goods, wares, or merchandise, or of goods and choses in action, within the meaning of statutes of fraud. The question of the application of the statute does arise, however, where the contract in question contemplates services to be extended in the production of a chattel which when finished is to be transferred to or belong to the other party, and many divergent views have been expressed as to whether such a contract is

one for the sale of the chattel, title to which is ultimately to pass to the buyer, and therefore within the statute of frauds, or one for work and labor unaffected by that statute. It has long been recognized in this country that a contract for the manufacture of an article or to produce an article by work and labor, although ultimately resulting in the transfer of the article when completed is not necessarily a contract of sale within the meaning of the provision of the statute of frauds governing contracts for the sale of goods, but may be a contract for work and labor not affected thereby, and the fact that a price is agreed on for the completed article is immaterial." 49 Am. Jur., p. 567, Statute of Frauds, Sec. 249.

The rule is not uniform as to whether the purchase of articles to be manufactured and not in existence comes within the statute. Three rules have finally emerged out of the great mass of opinions written and cases heard under similar sections of the Statute of Frauds. They are: (a) New York Rule; (b) English Rule; (c) Massachusetts Rule. The Massachusetts Rule is as follows: "In Massachusetts a rule * * * * is established to the effect that a contract for the sale of articles then existing, or such as the vendor, in the ordinary course of his business, manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute." Smith on Law of Fraud, p. 538.

It is not always easy to distinguish between a contract and purchase of sales of an article and a contract for labor and material to be wrought into an article. The general rule on this subject is that where a contract states or implies that the thing is to be made by the seller and also blends together the price of the thing and

compensation for work, and skill and material, so they cannot be discriminated, it is not a contract of purchase and sale, but a contract of hiring and service, or a bargain by which one party undertakes to labor in a certain way for the other party who is thereupon to pay him compensation.

In Smith on Law of Frauds, pp. 535, 536, under Sales and Contracts for Labor, in the footnotes of Section 374, the author quotes from 3 Parsons' Cont. 54, as follows:

"First—That a contract for the sale of goods is purely executory, is as much within the statute as is one to be executed in presenti. Second—That where a contract is made for an article not existing at the time in solido—to use the expression of the old cases—and when such article is to be made according to order, and as a thing distinguished from the general business of the maker, then such contract is, in substance and effect, not for a sale, but for work and materials. The first of the above rules is now received everywhere with entire judicial unanimity. With regard to the second rule, much conflict of opinion exists, but I think it is recommended by its evident consonance with the object of the statute, as well as by the decided weight of authority. It will be found to be sustained by the following well considered cases. Crookshank v. Burrell, 18 Johns (N.Y.), 58; Mixer v. Howarth, 38 Mass. 205; Hight v. Ripley, 19 Me. 137; Gardner v. Joy, 50 Mass. 177; Lamb v. Frafts, 53 Mass. 356."

It seems to be generally accepted that, "Where, however, the machine or apparatus to be delivered is to be manufactured according to a particular design or plan, the contract is not one of sale within the statute, unless it can be said to be suitable for sale to others in the ordinary course of the seller's business." 49 Am. Jur., p. 577, Statute of Frauds, Sec. 258. See also 20 CYC, Statute of Frauds, p. 241; Morris Furniture Co. v. Braverman (Iowa 1930), 230 N.W. 356.

The appellee contends, however, that these parts were to be manufactured by Allis-Chalmers and not Ludke Electric Company, and states the rule set out in 49 Am. Jur., Statute of Frauds, p. 574, Sec. 255, "* * * where it is understood that the goods are not to be manufactured by the seller, but are to be procured by him of some other person who manufactures and sells them, and are to be delivered by the seller to the buyer for an agreed price as completed articles of merchandise, it is generally recognized that the transaction is a sale." The defendant overlooked the remainder of this section, which is as follows: "This rule, however, is limited by the rule that the article manufactured must be such as is vendible in the general market. Although the article may be procured from a third person, if it is not a marketable commodity the contract should be held to be outside the operation of the statute. This position is well illustrated by a case where the defendant directed the plaintiff to have manufactured in Germany certain sashes which constituted part of a military uniform, and it was held that the contract was not a sale within the statute of frauds."

The defendant in the court below filed its motion under Section 1475.5, Mississippi Code, 1942, as amended, requesting a hearing upon the affirmative matter set up in its answer, "which was clearly distinct and readily separable" on which he had "the burden both as to the law and the facts", and submitted the matter to the trial court on the question of the Statute of Frauds. The plaintiff, The Ludke Electric Company, has pleaded a statement of facts in its "Replication to Affirmative Defenses" which would, if sustained, take the case out of the Statute of Frauds and the defendant's motion did not, therefore, "go to the entire present cause of action," but only to the written memorandum charged to be within the statute.

■■ ■ Where a case is taken out of the Statute of Frauds, for any reason, parol evidence is properly admissible to prove the terms of the agreement. Crossman v. Fontainebleau Hotel Corp., 273 F. 2d 720.

It has been said: "Evidence of an oral contract should not be rejected unconditionally." It should be left open to plaintiff to prove such contract if he also proves facts saving it from the statute. 20 CYC, Statute of Frauds, p. 320; Janes v. Morey, 44 Ill. 352; Scharff v. Klein, 29 Mo. App. 549, Holcombe v. Munson, 103 N.Y. 682, 9 N.E. 443. This is especially true where plaintiff has alleged facts which, if proved, will avoid the operation of the statute. Benedict v. Bird, 103 Iowa 612, 72 N.W. 768.

The test to determine whether or not manufactured articles come within the rule has been stated in the general law, as follows: "There is another and somewhat broader rule or test for distinguishing contracts of sale from contracts for work and labor and materials, and that is the marketability of the article manufactured. Comprehensively stated, this rule is that if the finished article is not a marketable commodity, the contract is not to be deemed to be within the operation of the statute; but if the article is vendible in the general market, the contract is one of sale within the statute." 49 Am. Jur., 572, 573, Statute of Frauds, Sec. 253.

Our Court in the case of Stonewall Manufacturing Co. v. Peek, 63 Miss. 342, directed that this case be submitted to a jury, where there was a conflict of evidence as to whether or not the transaction came within the Statute of Frauds.

■■ ■ We are of the opinion and so hold that this case should have been submitted to the jury under proper instructions of the court on the issues pleaded as to: (1) Whether or not the finished machine parts sought were a marketable commodity; (2) whether or not the Vicksburg Towing Company cancelled its order after having learned the parts were to be especially manufactured for

it. If the machine parts were articles the seller regularly manufactured from time to time in the ordinary course of its business, or were readily marketable, the plaintiff may not recover. On the other hand, if the machine parts were especially made for the defendant and were not readily marketable, the plaintiff may recover for such parts as were especially made for the defendant, provided defendant did not cancel its order with the plaintiff before the parts were made. The case will, therefore, be affirmed in part and reversed and remanded for trial on the issues above set out.

Affirmed in part, and reversed and remanded.

*Lee, P.J.,* and *Kyle, Gillespie* and *Jones, JJ.,* concur.