## THOMAS N. WAUL, Ex'r, &c. *v.* THOMAS KIRKMAN.

It has heretofore been held in this case, (13 S. & M. 599,) that the letters of H. do not constitute a sufficient memorandum in writing to charge him; and it is immaterial whether the proposition contained in them were accepted or not by K.; for, if accepted, the liability of H. was only that contemplated by the letters, which could not create a personal obligation; and if not accepted, there is no pretence to sustain the action.

The propositions contained in the letters were not accepted.

If H. was bound, it was the writing and the arrangement made in pursuance of it that fixed his liability. If the terms of the proposition had been accepted and the arrangement carried out accordingly, then H.'s liability would have been complete; but if a material change be subsequently made by the parties, and a new and different agreement is made between them in relation to the same subject-matter, such an agreement would not be valid in law, and the foundation of a personal obligation, unless evidenced by writing signed by the party to be charged by it: — *Held*, that a parol acceptance would in many cases be sufficient, but it must be of the written proposition according to its terms; for otherwise, the writing would not show the agreement made between the parties.

The rule is well settled, that a memorandum in writing to take a case like this out of the statute of frauds, must contain the substantial terms of the contract, expressed with such certainty, that they may be understood from the contract itself or some other writing to which it refers, without resorting to parol evidence. And where reference is made in the memorandum to another writing, it must be so clear as to prevent the possibility of one paper being substituted for another: — *Held*, that it was necessary that the letters of H. should show the amount of the debt proposed to be assumed, or refer to something

showing it in plain and distinct terms, and they are deficient in the certainty required.

The plaintiff in error in the circuit court asked the following instructions, which were refused by the court.   1st. " That the letters in evidence before the jury written by defendant's intestate, are not such written promises as under the statute of 'rauds would charge the said H. personally, or his estate after his death, with the debt sued for in this case."   2. " That an offer by Mr. H. to give his note or notes for the payment of plaintiff's claim, which was never carried out, imposes no liability on Mr. H. personally or his estate : " — *Held*, that these instructions were correct, and should have been given by the court.

The demurrer admitted the evidence, but not the facts which it was offered to prove.   In a demurrer to circumstantial evidence, it must state the facts which the evidence is offered to prove, and not merely the testimony which may conduce to prove them.

The refusal of the court to compel a party to join in a demurrer to evidence, cannot be assigned for error.   For this reason, as well as because the conclusions attempted to be established as facts from the circumstantial evidence are not admitted in the record, this court cannot pronounce a final judgment in the case.

In error from the circuit court of Yalobusha county ; Hon. John Watts, judge.

The plaintiff in error was sued as the executor of the last will and testament of Thomas Hurd, deceased, for a debt due to the defendant in error by Mrs. Hurd, in her lifetime.   This debt was due by Mrs. Hurd, formerly Mrs. Smith, at the time of her intermarriage with Hurd.   An account was stated in March, 1843, during the life of Mrs. Hurd, which Hurd acknowledged to be correct, and on this account stated the action is founded.   Mrs. Hurd died in October, 1843, leaving Hurd her executor, in which capacity he acted until his death, which occurred in 1846.   The suit was brought against Waul, Hurd's executor.

In addition to the letter written by Hurd in his lifetime to Kirkman relative to the debt sued, and which will be found set forth in 13 S. & M. 599, J. B. Lorance, a witness for defendant in error, stated that some time before Hurd's death, he, witness, lived with Hurd, and in conversation with him which took place in the fall of 1845, Hurd said he had been to Florence, Alabama, to see Kirkman, to get him to change the payments of interest on the debt due Kirkman, from semiannual to an-

Waul v. Kirkman.

nual payments, and he, Hurd, further said that the agreement between him and Kirkman was, that he was to pay Kirkman's debt out of the crops growing on the plantation by working Mrs. Hurd's hands; and that the debt was twelve or fifteen thousand dollars. Angus Johnson, a witness for Kirkman, had a conversation with Hurd in the year 1844 or 1845, in relation to the debt due Kirkman, when Hurd said he was paying a large debt to Kirkman out of the proceeds of the crops he was making on the plantation; and this conversation took place about a year before Hurd's death. This was the substance of the additional testimony given on a second trial of the case.

The jury found a verdict in favor of the defendant in error for $12,845.56, and a motion being made by appellant for a new trial, which was overruled by the court, he prayed and obtained a writ of error to this court.

*Watson* and *Craft* for appellant.

*Sharkey* and *Withers* on the same side.

*D. Mayes* on the same side.

*J. S.* and *Geo. S. Yerger* for appellee.

Mr. Justice HANDY delivered the opinion of the court.

The merits of this case, as now presented, are not materially changed from what they were when it was heretofore in this court as reported in 13 S. & M. 599; and we consider that decision conclusive of it as it is now presented.

The object of the suit was to fix upon the testator of the plaintiff in error a personal liability for a debt due by his deceased wife, which it is alleged he became individually liable to pay after her death, he being her executor, in consideration of forbearance by the defendant in error; and the question is, whether he became so liable or not. The defence was, that there was no such note or memorandum in writing as is required by the statute of frauds and perjuries, to charge the executor of the wife with the debt out of his own estate.

In order to establish a promise to satisfy the statute and to show that the executor intended to charge his individual estate to pay the debt, the plaintiff on the trial below offered certain letters in evidence addressed to Kirkman and signed by Samuel Hurd, the testator of the plaintiff in error, whilst he was executor of his wife, in connection with other letters written by him before he was executor and during the life of his wife. These letters were part of the record when the case was formerly here, and were then fully considered by the court, and it was adjudged that the letters, or such of them as are mostly relied on to support the claim, are not sufficient to create a personal liability, and must be considered as propositions to bind the estate. This is distinctly held in reference to all the letters up to that of November 16, 1843, and the subsequent letters contain nothing further tending to show an intention to become personally liable. The court say, in view of all the letters, that "they amount to evidence that the debt existed against the estate; that it was large, and Hurd desired to get an extension of time, by having it put into instalments for which he was willing to give his notes, with a lien upon the property of the estate, to secure their payment. He was executor, and had in his possession as such the property that was liable. His letters express nothing more than the desire which would be likely to be entertained by one in his situation. Suppose he had had no other connection with the estate than as executor, would these letters bind him personally? They clearly would not, if we have laid down the law correctly. The new consideration is wanting, no less than a definite promise to be personally liable."

It is, therefore, conclusively settled that the letters do not constitute a sufficient memorandum in writing to charge Hurd in reference to the statute of frauds, and it is immaterial whether the propositions contained in them were accepted or not by Kirkman, so far as the object of this suit is concerned. If accepted, his liability was only that contemplated by the letters, and he was not personally bound; if not accepted, there is no pretence to sustain the action.

But it is manifest that the propositions contained in the letters were not properly accepted, for if they had been, this suit

could never have been instituted. In all the letters referring to dividing the debt into instalments, it is proposed to arrange the matter by giving either notes for the instalments or a lien upon the estate, or both ; and the reason of this is stated in the letter of October 12, 1843, to be that he "wished the arrangements secure from any material change by the death of any concerned, otherwise after two or three years' toil he might see the whole estate sacrificed." Hence he desired a certain and available contract, securing the arrangement in writing, and none other was proposed by him. Such being the character of the written propositions of Hurd, he could not be made personally liable by virtue of them, except by showing that they were accepted and carried out according to the terms stated in them. It is not pretended that those terms were complied with. But by the testimony introduced on the last trial, it was attempted to be shown by the admissions of Hurd that those terms must have been varied and the notes and lien as proposed waived, and this is attempted to be established by inferences from indirect statements made by him.

We think it clear, that the liability could not be established by that means. It was the writing, and the arrangement made in pursuance of it, that fixed the liability of Hurd. If the terms of the proposition were accepted and the arrangement carried out accordingly, the liability would, of course, be complete. But if those terms are materially changed subsequently by the parties, and a new and different agreement is made between them in relation to the same subject-matter, such agreement would not be valid in law and the foundation of a personal liability, unless evidenced by writing signed by the party to be charged by it. It would not be the acceptance of the proposition in writing, but a different agreement not evidenced by writing. A parol acceptance would certainly be sufficient in many cases ; but it must be of the written proposition according to its terms, for otherwise the writing would not show the agreement made between the parties, and all the evils of uncertainty intended to be prevented by the statute of frauds would follow. This, we think, would be the rule in such cases even where it is positively shown that the terms of the contract as proposed in writ-

ing are afterwards materially changed by parol; and the rule would apply with much more force to cases like the present, where the fact of alteration of terms beneficial to the party proposing them is not positively proved, but is attempted to be inferred from circumstances, and indirect expressions made use of by the party sought to be charged.

It is insisted in behalf of the defendant in error, that as Hurd proposed to give his notes to Kirkman in consideration of forbearance, and the proposition was accepted, the notes, if they had been given, would have bound Hurd individually, though he intended to bind the estate. This may be true; but it by no means follows that he would be personally bound if the notes were not given. The liability in such case would not arise from his assumption of the debt of the estate, and it would depend upon principles wholly distinct from the statute of frauds. The question here is, not whether the notes, had they been given, would have imposed a personal liability on Hurd, but what was the intention of Hurd in making the propositions, the notes not having been given, and whether he intended to become personally bound for the debt. And this point has already been determined by the former decision of this court in the case.

Another objection urged in behalf of the plaintiff in error is, that the letters are insufficient to create a personal liability, because they are uncertain as to the amount of the debt alluded to, and indefinite in proposing simply a forbearance for five or six years, and in not specifying the time from which the arrangement was to take effect.

The rule upon this point is well settled to be, that the memorandum, in order to satisfy the statute, must contain the substantial terms of the contract expressed with such certainty that they may be understood from the contract itself, or some other writing to which it refers, without resorting to parol evidence. *Boydell* v. *Drummond,* 11 East, 142; *Parkhurst* v. *Van Courtlandt,* 1 J. C. R. 280; 1 Sug. Vend. (1 Amer. ed.), 89; *Blagden* v. *Bradbear,* 12 Ves. 466. For otherwise all the danger of perjury, intended to be guarded against by the statute, would be let in. And when reference is made in the memorandum to

another writing, it must be so clear as to prevent the possibility of one paper being substituted for another. 1 Sug. Vend. 94; *Smith* v. *Arnold*, 5 Mason, 416.

Applying these rules to the letters relied on in this case, it is clear that they are deficient in the certainty required. It was necessary either that they should show the amount of the debt proposed to be assumed, or refer to some writing showing it in plain and distinct terms. But nothing of this kind appears upon their face. None of them contain the amount, nor is the account sued on referred to as a written paper in such terms as to show beyond doubt that it was referred to. Under the indefinite expressions of the letters, any other account for any large amount might as well have been referred to as the account sued on in this case; for the debt is not even referred to as existing in the form of a stated account. Nor can we, under such circumstances, indulge in probabilities and so determine what was intended; for this would be worse than positive parol evidence, which is excluded by the statute.

On the trial below, the court refused to give the following instructions to the jury at the instance of the plaintiff in error.

" That the letters in evidence before the jury, written by defendant's testator, are not such written promises as under the statute of frauds would charge the said Hurd personally or his estate after his death, with the debt sued for in this case."

" That an offer by Mr. Hurd to give his note or notes for the payment of plaintiff's claim, which was never carried out, imposes no liability on Mr. Hurd personally, or on his estate."

Under the view we have taken of the evidence, these instructions were correct, and should have been given by the court.

It is further contended in behalf of the plaintiff in error, that the court below erred in refusing the motion to compel the plaintiff below to join in the demurrer to the evidence tendered by the defendant, and that this court should pronounce the judgment which that court should have pronounced on joinder in demurrer of the evidence.

The first of these positions we do not think correct under the state of the case shown in the record. The case of the plaintiff consisted partly of the letters written by the defendant's tes-

tator to the plaintiff, and of circumstantial evidence and declarations made by Hurd, given in evidence to show that he had made the arrangement for forbearance as claimed by the plaintiff, and that he admitted his personal liability in consequence of it. The former part of the evidence was sufficiently admitted by the demurrer, because its whole force appeared by the letters; but the latter branch of the evidence was not properly admitted. As to that, the demurrer merely admitted the evidence, and not the facts which it was offered to prove. The rule in cases of circumstantial evidence is that the demurrer must state the facts which the evidence is offered to prove, and not merely the testimony which may conduce to prove them. *Fowle* v. *Common Council*, &c. 11 Wheat. 320; 2 Serg. & R. 185.

As to the second position, so far as we have been able to find that the question has been adjudicated, it appears that the refusal of the court to compel a party to join in a demurrer to evidence cannot be assigned for error. *Young* v. *Black*, 7 Cranch, 565. For this reason, as well as because the conclusions attempted to be established as facts from the circumstantial evidence are not admitted in the record, we cannot pronounce a final judgment in the case.

The judgment is reversed, and a *venire de novo* awarded.

SMITH, C. J., concurred.

FISHER, J., having been counsel for the defendant in error, took no part in the decision of this case.