### H. F. GARNETT, Administrator, *v.* THOMAS KIRKMAN, Administrator.

1. NEW TRIAL: WHEN ABSENCE OF COUNSEL SUFFICIENT REASON FOR GRANTING.—The absence of counsel is not alone a sufficient reason for granting a new trial; it must also appear that there were probable merits in the party's case which sustains prejudice in consequence of such absence, and this court will determine from the facts and law of the case the existence and extent of such prejudice.

2. SAME: SAME.—The omission of counsel, from ignorance, mistake, or surprise, to use testimony at his command or within his reach, is not sufficient ground for new trial, if such testimony is immaterial, incompetent, or merely cumulative.

3. SAME: SAME: NEWLY DISCOVERED TESTIMONY.—The discovery of new testimony to constitute a ground for granting a new trial, must be such testimony as is competent and material, and such as with the other testimony would justify a verdict for the party seeking the new trial.

ERROR to the Circuit Court of Yalobusha county.    Hon. William Cothran, judge.

The facts appear in the opinion of the court.

*Watson & Craft* for plaintiff in error.

*Sale & Phelan* for defendant in error.

ELLETT, J., delivered the opinion of the court.

The defendant's intestate brought this suit, in 1849, against T. N. Waul, executor of Samuel Hurd, deceased, to recover an open account, due by the deceased wife of Hurd, before her

intermarriage with him. The case has already been three times before this court, and is found to be reported in 13 Smedes & M. 599, 27 Miss. 823, and 33 Miss. 389. The declaration contains but one count, which is on an account stated by and between the plaintiff below, and Hurd, the defendant, and the plea was non assumpsit. No copy of the account was filed. In effect, the cause was tried without pleadings, under a written agreement that all special matter might be given in evidence under the declaration, in the same manner as if the proper counts were written out, and that the plaintiff should be at liberty to show other and different agreements than the one named in the declaration ; and the defendant to be allowed to make every defence.

Mrs. Hurd had died on the 8th of October, 1843, leaving a will, of which her husband became the executor. On the first trial, it would appear that the effort was to charge Hurd personally for the debt, on the ground that, both before and after his wife's death, he had promised to pay it, in consideration of forbearance. Most of the evidence since relied on was then before the court, and it was decided that there was no evidence sufficient to establish an agreement by Hurd, such as was alleged by the plaintiff. There was no agreement for forbearance proved, and as to the promises made in Mrs. Hurd's lifetime, it was held that these amounted to no more than a recognition of his common law liability, as husband, for the debts of his wife ; and as to those made after her death, these were invalid for want of a new consideration, and because not in writing, as required by the statute of frauds.

When the case came here the second time, it appeared that the right of recovery had been rested in the court below solely on the ground of promises made by Hurd, after the death of his wife, to pay the debt in consideration of forbearance ; and the letters of Hurd to Kirkman, some written in the lifetime of his wife, and others after her decease, and some before, and some after his qualification as executor, all of which had been given in evidence on the former trial, were relied on as sufficient evidence of an agreement in writing within the statute of

frauds.    It was again decided that the evidence did not
show any promise to pay in consideration of forbearance,
nor any agreement for forbearance whatever; and that the
letters were, at best, mere unaccepted proposals of terms of
adjustment.

On the third appearance of the cause in this court, the record
showed that the right of recovery had been rested in the court
below, on the ground that Hurd, during the life of his wife,
being then liable as husband for her debts, had made a new
and original agreement with Kirkman, whereby he assumed
absolutely the payment of the debt, in consideration of for-
bearance, and time given him by Kirkman; and that such an
agreement was not within the statute of frauds.    After a close
and searching examination of all the testimony, this court came
to the conclusion that there was no evidence in the cause, legi-
timately conducing to the conclusion that any such agreement as
that relied on by the plaintiff had ever existed; and that the
court below had therefore erred in refusing to instruct the jury,
as requested by the defendant, " that in this case the plaintiff
has proved nothing which conduces to show his right to re-
cover, and that they must find for the defendant."

After this decision the cause was again tried in the Circuit
Court of Yalobusha county at April term, 1858, and a verdict
found in favor of the defendant.    This verdict was set aside on
motion of the plaintiff, and a new trial was had at the October
term, 1858, which resulted in a verdict for the plaintiff.    A
motion made by defendant to set aside this last verdict was
overruled by the court, and judgment entered upon it.    On
both these last trials the defendant took bills of exception to
the action of the court on the motions for a new trial, in sus-
taining the first and overruling the second, and upon these bills
of exception the cause is again brought to this court.

It is first insisted that the court erred in granting the new
trial on the motion of the plaintiff, at April term, 1858, and in
refusing to enter up a final judgment in favor of the defendant,
on the verdict of the jury.

The record shows that in this trial the plaintiff relied on the

same evidence that was before this court on the preceding trial, except that the testimony of Angus Johnson, and several letters of Hurd to Kirkman, written after the death of Mrs. Hurd, do not appear to have been offered on this trial, and except that the marriage contract between Hurd and his wife, on being offered, was ruled out by the court.

No instructions were given or asked, on the part of the plaintiff; but a number of charges were given at the instance of the defendant, fully and clearly expounding the law of the case, according to the former decisions of this court, and including the charge refused on the former trial, which of itself was conclusive of the case.

On the motion for this new trial, no objection was made to any action of the court during the trial, nor was it pretended that the verdict was against the law or the evidence, as the case was presented to the jury. The plaintiff stated several propositions as the grounds of his motion, all of which are resolvable into two, to wit: *First.* That he was forced into trial in the absence of the counsel upon whom he relied to try the cause, and was thereby prevented from having his case fairly presented, and by which injustice was done him; and *secondly*, because, since the trial, he had discovered new and material evidence.

As to the first ground, the absence of counsel is not, alone, a sufficient reason for granting a new trial. It must also appear that there were probable merits in the party's case, which sustained prejudice in consequence of the absence of the counsel relied on to present the case to the court and jury. In this case it is too late for the plaintiff to claim the existence of merits, so far as relates to the testimony given on the trial. That testimony had already been three times decided by this court, not to conduce, in any degree, to make out a case for the plaintiff. The most that can be said of it is, that it goes to show, perhaps with sufficient clearness, that the wife of the defendant's testator owed the debt sued on to the plaintiff, before her marriage, and that it was a just claim against her estate, in his hands as her executor. But in every aspect in

7

which it had been offered to establish the liability of Mr. Hurd, after the death of his wife, to pay the debt out of his own estate, it had been held to be totally insufficient for the purpose.

The only special ground alleged by the plaintiff in his affidavit, read in support of the motion for a new trial, to show that his cause was prejudiced by the absence of counsel, is, that certain written testimony, which was among the papers at the trial, was not read by the counsel, unexpectedly introduced to try the cause, they being unaware of its importance, and ignorant of the connection of the case. The testimony alluded to consisted of the letters of Hurd to Kirkman, written after the death of Mrs. Hurd, and dated respectively October 12, 1843; November 16, 1843; November 26, 1843; May 15, 1845; September 16, 1845, and February 6, 1846. These same letters had been read in evidence on the previous trials of the cause; had been carefully considered by this court, and had been regarded as not conducing to the proof of the plaintiff's case in any view in which it had been presented, except, indeed, as evidence of the correctness of the account, as against Mrs. Hurd while she was Mrs. Smith. And it was when these very letters were a part of the evidence in the record, that this court said, that the court below ought to have charged the jury that the plaintiff had proved nothing which conduced to show his right to recover, and that they must find for the defendant. 33 Miss. 405.

It is, therefore, very clear that the plaintiff could not possibly have suffered any legal prejudice by the absence of his favorite counsel from the trial, or by the failure of the counsel who represented him to read in evidence the letters referred to. It is unnecessary for us now to discuss the general merits of the case, or to show the true character and bearing of this particular testimony, when this has been done, so satisfactorily and fully, in the former opinions of the court, already quoted.

The plaintiff, in his affidavit, swears very positively to the justice of his claim, and to the prejudice sustained by him in consequence of the absence of the counsel upon whom he relied to sustain it; but these are necessarily matters of law, as well as

fact, and the court cannot surrender its own judgment on the subject, so maturely formed, and so often expressed. If the law and the facts of the case had not already been fully investigated and decided by this court, when formally before it, we might hesitate to undertake to settle the merits of the controversy in the present proceeding; but when, so far as regards the testimony known to exist at the time of the trial below, the whole question is *res judicata*, and nothing is left open for dispute, we cannot recognize the omission of counsel, under whatever circumstances of ignorance, mistake or surprise, to read these letters again to the jury, as affording any sufficient ground for granting a new trial.

The second ground relied on in the court below for setting aside the verdict, was the discovery of new and material evidence by the plaintiff.

The affidavit of the plaintiff states on this point, that, since the trial, he had discovered that he could prove by S. H. Cowles, that he heard defendant's testator often speak of owing a heavy debt to plaintiff, or to Jane Smith, which is the same debt, and invariably of his intention of paying it. And also that he could prove, by Thomas S. Wynne, the certainty of the existence of a letter of instructions, which he had before had reason to believe that Mr. Hurd had left, addressed to Waul, his executor, in reference to his affairs; that the same was read to said Wynne by said Waul; and that in it the debt to affiant was recognized, and its payment provided for.

The affidavits of said Cowles and Wynne were also read. Cowles said he was a nephew of Hurd, and was a member of his family at the time of his death, and for seven or eight years previous. That a short time before he died, Hurd handed him his will, and letters addressed to the trustees, and one to General Waul, the executor. He put them in the secretary, and kept the key. A day or two after Mr. Hurd's death, he delivered the will and letters to General Waul. He further stated, that he heard his uncle often speak of owing a heavy debt to Jane Smith, and invariably of his intention of paying it.

Wynne stated, that he lived with Hurd, as overseer, from

March, 1843, until his death, and had many conversations with
him respecting his indebtedness to Kirkman, or Jane Smith, as
he more frequently styled it. He always spoke of paying it,
and contemplated in the event of his death, that the plantation
should be carried on until it was paid. Hurd showed him a
letter of instructions to Means and Gray, and another to Finley,
and a letter of instructions to Waul, as executor, and said if
they were not sealed, he would read them to witness. They
were locked up in the secretary, and the key given to Cowles.
After Hurd's death, he saw Cowles deliver the letters to Waul.
About two weeks after the death of Hurd, Waul read to wit-
ness the letter of instructions to him. It contained minute
directions about Hurd's affairs: how the orchard was to be
extended,—what was to be done with the graveyard, and what
kind of tombstones were to be erected. It also directed that
Jane's debt should be paid, and the plantation continued under
the management of witness. He estimated it would be done
in five or six years. If the plantation did not pay Jane Smith's
debt by the time it was required, he designated which negroes
should be sold to pay it, giving a list of the order in which
they were to be sold, according to the amount to be paid, and
amounting to more than half.

The foregoing is all that is material in the affidavits on this
point; and it is clear, that if all this newly discovered evidence
had been before the jury, it ought not to have produced a dif-
ferent result. It is to be borne in mind that the debt sued for
was a debt due by Mrs. Hurd, before her marriage with Hurd,
and that after her death he was under no liability to pay it,
unless he had, before or after her death, bound himself abso-
lutely for its payment, by a valid agreement, founded on a suf-
ficient consideration. It is pretended that such an agreement
was made by Hurd, in consideration of an agreement by Kirk-
man to forbear to sue him, and to give him time for payment.
What constitutes a valid agreement for forbearance, and what
is necessary to constitute a good promise in consideration of
such forbearance, are subjects that have been fully treated of in
the former decisions in this cause. It is enough to say, that it

is now the settled law of this case, that the declarations of
Hurd, as sworn to by the witnesses Lorance, Johnson, and
Ferguson, and as contained in his letters to Kirkman, concern-
ing his owing a large debt to Kirkman, or to Jane Smith; of
his intention to pay it; of his agreement with Kirkman to pay
it out of the proceeds of the crops grown on the plantation,
and the like, did not even conduce to establish such an agree-
ment as would justify a verdict against the representative of
Hurd. This being so, no additional amount of the same
description of testimony could have any legitimate influence in
the cause. The statements of Cowles and Wynne are no stronger
than those of the other witnesses above named, and add nothing
to what was already proved, and not contradicted or denied.
The contents of the letter of instructions of the testator to
Waul, as sworn to by Wynne, are not substantially different
from the other letters addressed to Kirkman himself, and require
the same interpretation. The whole of it, written as well as
verbal, is not only mere cumulative evidence upon a point three
times previously litigated, but cumulative evidence of a char-
acter already decided to be totally insufficient to maintain the
case for the plaintiff. It is not material evidence, as already
adjudged in the case, and, therefore, it is not necessary to in-
quire how much of it is newly discovered, or might have been
known long before, by the exercise of proper diligence. Not
being material, its discovery furnished no sufficient ground for
granting a new trial.

Plaintiff also stated in his affidavit that there were two other
witnesses, whom he names, by whom he expected to prove de-
clarations of Mr. Hurd, to the effect that he owed plaintiff the
debt sued on. Besides the objections already considered, which
apply to this testimony in all their force, it is not pretended this
was newly discovered evidence, and no diligence had been used to
procure the attendance of the witnesses.

It was also stated in the affidavit of the plaintiff, that he ex-
pected to obtain the deposition of Waul, in regard to the exist-
ence and contents of the letter of instructions, to be read on a
future trial of the cause; but it is not shown that the contents of

the letter were material to the cause, under the former rulings of the court, and therefore the desire to obtain Waul's deposition was no sufficient ground for granting a new trial. Besides, it appears from plaintiff's own affidavit, and from the testimony of Ferguson, given some years before, that plaintiff knew of this letter of instructions in the hands of Waul, and that he had been advised of the importance of taking his deposition, if he wished to avail himself of his testimony, and that he had neglected to obtain it.

On the whole, we are of opinion that the court below erred in setting aside the verdict in favor of the defendant, and, therefore, that the judgment rendered in favor of the plaintiff below on the 4th day of November, 1858, should be reversed, and final judgment entered here in favor of the defendant below, on the verdict found at April term, 1858.