FLOYD WILLIS *v.* WILLIAM C. ELLIS.

[53 South. 498.]

STATUTE OF FRAUDS. *Code* 1906, § 4779. *Sales of personalty. Memorandum. Sufficiency.*

Under the statute of frauds; Code 1906, § 4779, providing that a contract for the sale of personalty, for the price of fifty dollars or upwards, shall not be allowed to be good and valid unless the buyer shall receive part of the property . . . or shall pay or secure the purchase money, or a part thereof, or unless some note or memorandum, in writing, or the bargain be made and signed by the party to be charged, etc.:

(a) A memorandum to satisfy the statute must contain the substantial terms of the contract, expressed with such certainty that they may be understood from the contract, or some other writing to which it refers, without resort to parol evidence; but

(b) A memorandum of a contract of sale of personalty need not, to be sufficient within the statute, fix the place of delivery, since, in the absence of such a stipulation, the law fixes the place of delivery; and

(c) A written acceptance of a written offer to sell personalty is not necessary to constitute a sufficient memorandum under the statute.

FROM the circuit court of Rankin county.

HON. C. L. DOBBS, Judge.

Willis, appellant, was plaintiff in the court below; Ellis, appellee, was defendant there. From a judgment in defendant's favor, sustaining a demurrer to the declaration and dismissing the suit, plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*May & Sanders,* for appellant.

The written memorandum binding the parties is in these words: "Beg to confirm purchase of you to-day B-S cotton, middle and above running receipts, weights

guaranteed, at 12c. f. o. b. Florence—September delivery. Kindly confirm same to me." Signed Floyd Willis."

This shows upon its face that plaintiff was bound to take and pay for the one hundred bales of cotton of the specified quality at the stipulated price when the same should be tendered by the defendant.

The defendant in his letter acknowledges and accepts the contract of purchase and sale in the following language:

"Your confirmation of the purchase of . . . bales of cotton received. You make it September delivery when it should be October."

The court will not say that the one surplusage statement contained in appellee's letter is not quoted, but we will hereafter quote and discuss same.

This written communication between these parties clearly shows an antecedent verbal contract which the statute under consideration requires to be evidenced in writing.

The omitted surplusage statement of appellee's letter evidencing his assent to the contract is as follows: "I am willing to put up margin for the faithful performance of contract and require same of you. Cotton be compressed at Mount Olive, and settled by compress weights."

The court will note that appellee himself says by this communication there was and there is a contract. What contract? Contract of sale and purchase; contract by appellant to buy; contract by appellee to sell and deliver? Then is this or not a written memorandum of a contract for the purchase of personal property?

The statute simply requires that the terms of the contract may be made known without resort to oral proof, and nothing more. Let it be said that the minds of the parties did not meet upon the added stipulation of the selling party, that he would require the plaintiff to put

up a margin to protect defendant from probable loss. Does that even tend remotely to show to this court that there was not a contract for sale on the one hand and delivery on the other at an agreed price? The very letter itself shows that there was a contract and says, ''I am willing to put up margin for the faithful execution of the contract, and I shall require you to do the same.'' Suppose this appellant had replied to this communication, ''I refuse to put up a margin for my faithful performance of this contract but I remit you to your legal remedy.'' In the event of a breach of the contract could this court say, and would it say there was no contract within the meaning of the statute of frauds, because a condition subsequently imposed by one of the parties had not been accepted by the other for the faithful performance of an understood contract which was evidenced by the writing of the accepting party, and the party sought to be charged under the contract? Or suppose appellant had accepted the proposition and appellee failed and refused to put up his margin—could the contract thereby be defeated by appellee's own act? This court would not entertain such contention for a moment, it would only look to the evidence as to whether there had been an executed contract sufficiently evidenced by written memorandum, and as to modes, methods and manner of its execution or its breach, it would have no concern in considering the question here presented. If it may be said that there was a subsequent condition which might serve to vitiate the contract and this condition was accepted, and agreed to by appellant, and the condition was not met by appellant, this would be a matter of defense in a trial on the merits but certainly it could have no place in the consideration of the question here under consideration. In other words, the court will simply treat this statement as surplusage in the light of the announcement of appellee, that there was a contract. Under appellant's letter he was bound to

accept and pay for the cotton when tendered by the seller and when this written offer of purchase was accepted in the writing of the seller, he (the seller) thereby became bound to deliver to appellant (or some one designated by him) the quantity of cotton of the quality and price, within the time specified.

The law will not look for a loophole for the escape of a party from the performance of his bounden duty. It will not read this afterthought into the contract as a condition upon which its validity depends, as it manifestly does, if this should be held an element of the contract. How easy it would have been to make it clear that unless the margin was put up defendant would declare all negotiations off, but could the defendant have declared negotiations off because plaintiff refused to put up the margin?

Again it is stated in the declaration that even though these afterthoughts may be construed so as to reach to the terms of the contract they were waived and we respectfully submit that this might be done without in any sense impairing the original contract, especially where the only question is, was there an original contract? or as the statute says, was there some memorandum or note thereof in writing signed by the party to be charged therewith.

In *Cummings* v. *Arnold,* 37 Am. Dec. 155 (3 Metcalf) 486, the court speaking through Wilde, Judge, says:

"This rule is laid down by Lord Denman, in *Goss* v. *Nugent,* 5 Barn. & Adol. 65, as a well established principle, in these terms: 'After the agreement had been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether or waive, dissolve, or annul the former agreement, or in any manner to add to, or subtract from, or vary or qualify the terms of it, and thus to make a new contract; which is to be proved, partly by the written agreement, and partly by the subsequent

verbal terms engrafted upon what will be thus left of the written agreement.'

"The same principle, substantially, is maintained by numerous cases both in England and in this country; *Milton* v. *Edgeworth,* 5 Bro. P. C. (2d Ed.), 313; 1 Mod. 262, 2 Id. 259; 12 Id. 538; 3 T. R. 590; 1 East. 631; 12 Id. 578; 3 Stark. Ec. 1002; Chit. Con. (5th Ed.), 108; 14 Johns. 330; 9 Cow. 115; 1 Johns. Cas. 22; 3 Id. 60; 3 Johns. 531; 12 Wend. 446; 13 Id. 71; 9 Pick. 298; 13 Id. 446; 2 Watts. 456; 5 Cow. 497; 7 Id. 50; 3 Fairf. 441; 4 N. H. 40; 6 Halst. 174; 1 A. K. Marsh. 582."

*McWillie & Thompson,* for appellee.

There is no reason to consider the statute of frauds further than to call attention to the fact that the price of the cotton being in excess of fifty dollars, the contract for its sale must be evidenced by writing. The plaintiff seems to have recognized this but the letters exhibited with the declaration do not disclose a contract. On the contrary, they show as pointed out in the assignments of the demurrer that there were a number of particulars in respect to which the minds of the parties had not met.

Propositions and counter propositions do not make a contract; before either party is bound, the proposition of one of them must be accepted by the other exactly as proposed; there must be a meeting of minds on the same thing. *Insurance Co* v. *McIntosh,* 86 Miss. 236.

In the case of *Minneapolis, etc. R. Co.* v. *Columbus Rolling Mill Co.,* 119 U. S. 149, the Federal Supreme Court used the following language:

"The rules of law which govern this case are well settled. As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the

negotiation remains open, and imposes no obligation upon either party; the one may decline to accept or the other may withdraw his offer, and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts and end to the negotiation unless the party who made the original offer renews it or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it.''

The law on this subject is stated on most abundant authority to be as follows:

''An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement.'' 9 Cyc. 267.

''A letter or other writing containing an offer merely is sufficient as a memorandum only when read in connection with a written acceptance of such offer which does not vary or modify the terms thereof. 27 Am. and Eng. Ency. L. (2d Ed.), p. 874.

There can be no memorandum of a contract until the contract has been made, and until the existence of the contract is apparent we can see no occasion to consider the matter of the sufficiency of the memorandum.

That the minds of the parties had met must be shown by the writings themselves, and the writings relied on in this case not only fail to show that they had met but affirmatively show the contrary. The two letters filed with the declaration show the ordinary case of an offer and a qualified and conditional acceptance setting out additional terms required by the person to whom the

offer was made which were never assented to in such manner as to become binding.

The additional terms imposed by the defendant were the following: (1) Different time of delivery. (2) Different place of delivery. (3) The putting up of a margin to secure performance of the contract. (4) The settlement to be by weights of Mt. Olive compress. No one can doubt that time is of the essence of a contract involving the delivery of cotton sold thereunder, and there is no pretense that the defendant ever waived the condition that the cotton was to be for October delivery instead of September delivery as proposed. The plaintiff claims to have assented to this stipulation, but such assent not only was not evidenced by any writing, but it is not alleged to have been communicated to defendant.

A mere mental determination to accept does not complete a contract or bind the parties. It must be communicated. 7 Am. and Eng. Ency. Law (2d Ed.), p. 129, and cases cited in note 2. There was also no pretense that the defendant waived the stipulation that plaintiff was to put up a margin to secure the performance of the contract, nor does plaintiff claim that he ever assented to that requirement or in fact put up any margin. If there was any contract between the plaintiff and defendant not void under the statute of frauds, it is to be found in the writings Exhibits A and B to the declaration, and to allow the plaintiff to show that the defendant waived any of the terms expressed in said exhibit would be to vary the terms of a written contract by parol. 27 Am. and Eng. Ency. Law, p. 824.

The averment of the declaration that defendant waived the stipulation that the cotton should be compressed at Mt. Olive and Mt. Olive weights should control in making settlement plainly endeavors to alter by parol the terms imposed by defendant in writing. *McGuire* v. *Stevens,* 42 Miss. 724; *Waul* v. *Kirkman,* 27 Miss. 823.

There is a difference between executed and executory contracts, and the distinction has been observed by this court. *Moore* v. *McAlester,* 34 Miss. 500.

The statute of frauds would be of little value if parties could virtually make for their adversaries by parol contracts required to be in writing through testimony as to waivers of stipulations expressed in writing. This might be made as fruitful a source of fraud as to permit the contract itself to be proved by parol.

It is idle, however, to consider parol waiver of the stipulations of a contract that never existed. Aside from the other features of the controversy, it is undeniable that the plaintiff does not claim that he ever assented to or complied with the condition requiring a margin to be put up by way of security, or that the same was ever waived by defendant. This was a material addition to the terms of the contract proposed and it is plain that the minds of the parties never met. In addition to the other authorities cited we beg to call the court's attention to the following: *Rector* v. *Sauer,* 69 Miss. 235; *Frank* v. *Eltringham,* 65 Miss. '281.

A very important difference between the proposition Made by the appellant Willis to the. appellee Ellis and the latter's qualified acceptance and to be found in the fact that the appellant's letter proposed a purchase of one hundred bales of cotton and the reply of the appellee relating to a sale of only one bale of cotton. These letters are shown by the record exactly as they existed in fact. It may be that the appellee Ellis meant to refer in his reply letter to one hundred bales of cotton but he in fact referred to only one bale of cotton. The declaration does not allege any mistake in this respect and moreover if a mistake existed the contract could not be reformed in a court of law. We submit that this was another feature of the contract in which the qualified acceptance widely departed from the offer made.

MAYES, C. J., delivered the opinion of the court.

On the 9th of November, 1909, Floyd Willis instituted suit in the circuit court of Rankin county against W. C. Ellis. The object of the suit was to recover from Ellis the sum of fourteen hundred dollars, claimed as damage for the breach of an alleged contract which Willis claims he made with Ellis, whereby Ellis contracted to sell to Willis one hundred bales of cotton. The case made by the declaration is substantially as follows, viz.:

Willis states that on the 19th of August, 1909, he purchased from Ellis one hundred bales of cotton at twelve cents per pound f. o. b. Florence, Mississippi, for October delivery, and that the contract of purchase was first made over the telephone, and later both parties confirmed the contract by letter. Willis states that, while his own letter confirming the sale called for September delivery, he verbally accepted the counter proposition, contained in Ellis' letter, fixing October as the time of delivery. Willis further states in his declaration that, while Ellis stipulated in his letter of confirmation that delivery of the cotton should be made at Mt. Olive, subsequently Ellis waived this stipulation and agreed to delivery in Jackson. Willis then alleges that under the contract Ellis became bound to sell and deliver him one hundred bales of cotton during the month of October, 1909, of the quality, weight, and price fixed by the contract, but that Ellis totally disregarded his obligation, and neglected and refused to deliver the cotton called for in the contract, and claiming damage in the sum of fourteen hundred dollars. The letters are filed and attached to the declaration and are as follows:

"August 19th, 1909.

"W. C. Ellis, Esq., Florence—Dear Sir: Beg to confirm purchase of you to-day 100 B|S cotton, middling and above, running receipts, weights guaranteed, at 12c f. o. b. Florence, September delivery. Kindly confirm same to me.

"Yours truly,          FLOYD WILLIS."

"Florence, Miss., Aug. 20th, 1909.

"Mr. Floyd Willis, Jackson, Miss.—Dear Sir: Your confirmation of the purchase of one bales cotton delivery. You make it September delivery, when it should be October. I am willing to put up margin for faithful performance of contract and require the same of you. Cotton be compressed at Mt. Olive, and settle by compress weights.

                    "Yours truly,          W. C. Ellis."

To this declaration a demurrer was filed, raising the question of the validity of the contract of sale, and claiming that the alleged contract was void, because in violation of § 4779 of the Code of 1906. The main provision of this section is as follows: "A contract for the sale of any property, for the price of fifty dollars or upwards, shall not be allowed to be good and valid unless the buyer shall receive part of the personal property, . . . or shall actually pay or secure the purchase money, or part thereof, or unless some note or memorandum, in writing, of the bargain be made and signed by the party to be charged by such contract, or his agent thereunto lawfully authorized." The trial court sustained the demurrer, and, on the refusal of Willis to amend, dismissed the declaration, from which judgment an appeal is prosecuted here.

In our judgment these two letters fulfill all the requirements of section 4779 of the Code. The letter written by Ellis, standing by itself, would not be a sufficient memorandum to satisfy the statute; but its internal reference to the letter written by Willis to the writer identifies certainly and incorporates into the Ellis letter the letter written by Willis to him. In writing to Willis, Ellis says: "Your confirmation of one bales cotton received. I am willing to put up margin for faithful performance of contract," etc. There was but one contract so far as this record shows, and there was but one confirmation written by Willis to Ellis, and that was the

98 Miss.]                    Opinion of the court.

confirmation of the contract stated in Willis' letter to Ellis. When Ellis speaks of the "faithful performance of contract" in his letter of the 20th of August, written the next day after the contract was made, he must refer, and can only refer, to the contract stated by Willis in his letter. The quantity of cotton bought, the price to be paid, etc., is fixed by Willis' letter to Ellis, and it is of no moment that Ellis says, "Your confirmation of *one bales* cotton" received. Since Willis' letter is by reference incorporated into and becomes a part of the memorandum signed by Ellis, we look to it for full ascertainment of what the contract was, and not to Ellis' letter. In fact, Ellis does not undertake to state the terms of the contract in any way, and the failure to state the number of bales of cotton sold to Willis leaves his letter no more indefinite than the failure to state the price to be paid, etc. In short, if the measure of Willis' right must be found on the face of Ellis' letter alone, of course, he would be bound to fail in this suit. But Willis' letter becomes Ellis' letter by internal reference and incorporation, and the Willis letter clearly shows that one hundred bales of cotton were sold to Willis by Ellis.

In the case of *Waul* v. *Kirkman,* 27 Miss. 823, repeated in *Fisher* v. *Kuhn,* 54 Miss. 480, and *McGuire* v. *Stevens,* 42 Miss. 724, 2 Am. Rep. 649, it is held that the memorandum, required by the statute to be signed by the party sought to be charged therewith, need not be the sole repository of all the terms of the contract; but, if it refers to and incorporates into it another writing, which clearly shows the contract, the memorandum is good. In the case of *Waul* v. *Kirkman,* 27 Miss. 823, which all of our decisions follow, it is stated: "The rule upon this point is well settled to be that the memorandum, in order to satisfy the statute, must contain the substantial terms of the contract, expressed with such certainty that they may be understood from the contract itself, or

some other writing to which it refers, without resorting to parol evidence. *Boydell* v. *Drummond,* 11 East 142; *Parkhurst* v. *Van Courtland,* 1 J. C. R. 280; 1 Sug. Vend. (1 Am. Ed.) 89; *Blagden* v. *Bradbear,* 12 Ves. 466. For otherwise all the danger of perjury, intended to be guarded against by the statute, would be let in. And when reference is made in the memorandum to another writing, it must be so clear as to prevent the possibility of one paper being substituted for another." See, also, *Wilkinson* v. *Taylor Mfg. Co.,* 67 Miss. 231, 7 South. 356. This same rule is stated in the case of *Freeland* v. *Ritz,* 154 Mass. 257, 28 N. E. 226, 12 L. R. A. 561, 26 Am. St. Rep. 244, and in volume 20, p. 278, of Cyc. Under the notes found in this last citation, countless authorities are collected sustaining this same view.

It is true that the letter of Ellis contains some counter propositions; but the two letters, taken together, clearly ascertain the contract. For instance, Ellis states, "You make it September delivery, when it should be October delivery;" but Willis states that he verbally assented to October delivery, and this, we think, he had a right to do, as we will undertake to show later. Again, Ellis states, "Cotton to be compressed at Mt. Olive" for delivery, whereas Willis had fixed Florence as the place; but the declaration alleges that both parties verbally agreed that delivery should afterwards be made at Jackson, and waived this stipulation. The statute only requires that the contract for the sale be evidenced by writing, and in order to make a perfect contract of sale, within the meaning of the statute, no place of delivery need be stated therein, since, in the absence of such stiplation, the law fixes a place of delivery. This being true, the place of delivery is not an essential feature of a contract of sale. In ascertaining damage, it may become material to prove the place of delivery, and this can be done if it is not named in the contract. It is

true that there is' no written acceptance shown on the part of Willis, but none was required. Our own court so held in the case of *Waul* v. *Kirkman,* 27 Miss. 823, and in volume 20 of Cyc., at page 254, in the notes, will be found many authorities on this point. In this authority it is stated that in the case of *Rector Provision Co.* v. *Sauer,* 69 Miss. 235, 13 South. 623, this court held the contrary; but an examination of the case shows that this question was not involved.

*Reversed and remanded.*