POSTAL TELEGRAPH & CABLE CO. v. FRIEDHOF.

[90 South. 182. No. 22237.]

1. FRAUDS, STATUTE OF.  *Written memorandum to answer debt, of another, signed with initials not showing by whom or to whom payable, held within statute.*

Under the first section of the statute of frauds (section 4775, Code of 1906; section 3119, Hemingway's Code), which provides, among

other things, that a promise to answer the debt, default, or mis-
carriage of another shall be in writing, signed by the party sought to
be charged, a written memorandum signed alone with the initials
of the manager of the party sought to be charged, which shows the
amount of money due, but fails to show by whom and to whom the
same is payable, is within the statute, and such a writing imposes
no obligation on such party sought to be charged.

2. Principal and Agent. *Fact of agency and scope of authority cannot
be shown by agent's declarations.*
   Neither the fact of agency nor the scope and authority of the agent
   can be shown by the declarations of the alleged agent made out of
   court.

Appeal from circuit court of Lauderdale county.

Hon. J. H. Fatheree, Judge.

Action by Theodore Friedhof, Jr., against the Postal
Telegraph & Cable Company. Judgment for plaintiff, and
defendant appeals. Reversed, and judgment for defend-
ant.

The appellee, Theodore Friedhof, Jr., recovered a judg-
ment in the circuit court of Lauderdale county against the
appellant, Postal Telegraph & Cable Company, in the sum
of eighty-seven dollars and fifty-five cents, with interest,
aggregating ninety-five dollars and forty-two cents for
services alleged by the appellee to have been rendered ap-
pellant by him in repairing the bicycles of appellant's mes-
senger boys. At the conclusion of the evidence each party
moved the court for a directed verdict. The motion of the
appellant was overruled, and that of the appellee sustained,
and verdict and judgment entered accordingly, from which
appellant prosecutes this appeal.

Stating the evidence must strongly for the appellee, this
state of facts is shown: Appellant was engaged in the tele-
graph business with an office at Meridian, of which H. L.
Barksdale was the manager. In receiving and transmitting
messages through its said office, appellant had employed
several messenger boys whose duty it was, on call of its
patrons, to take up messages to be transmitted through
said office, as well as to deliver messages received through

said office. Some of these messenger boys used bicycles in the performance of their duty, while others did not. Those who used bicycles were in the habit of having them repaired by the appellee, who was engaged in that business. Appellee testified that appellant's manager at its Meridian office, Barksdale, agreed to retain out of the salaries of these messenger boys the amounts necessary to pay their repair bills; that when they had their bicycles repaired his custom was to make out the bill in duplicate, one copy of which he retained, the other the messenger boy took to the manager, Barksdale, and had him O. K. it, which O. K'd bill was then returned to appellee; that he charged all of these accounts to the appellant and H. L. Barksdale, but made no claim that the services were rendered either for Barksdale or the appellant, contending that the appellant was liable because its manager, Barksdale, had agreed to hold out of the salaries of the boys sufficient sum to pay their repair bills, and had failed to do so to the amount for which suit was brought and judgment was recovered. Barksdale's initials were "H. L." As an example of how these bills were O. K.'d, we take the account of Sylvester Davies as follows: "Sylvester Davies—one light—two dollars and fifty cents."

"O. K. H. L. B."

The caption of the account (not the O. K.'d bills) as made out and introduced in evidence is in this language: "Postal Telegraph Company and H. L. Barksdale, in Account with Theo. Friedhof, Jr."

Appellee testified further that the manager, Barksdale, paid some of these repair bills, but refused to pay those for which this suit was brought. Barksdale testified that the messenger boys furnished their own bicycles; that, as manager of its Meridian office, he had no authority from the appellant to pay for the repairs in question; that appellant never had paid for any of such repairs; that in two or three instances he had advanced the messenger boys sums of money on his own account; that the sole object and purpose of his O. K.'ing the repair bills was to keep the

appellee informed as to what messenger boys were in the employ of the appellant. His testimony that he had no authority from appellant to make any agreement whatever with reference to paying the repair bills in question is undisputed.

*R. F. Cochran,* for appellant.

None of the authorities cited in appellee's brief have any sort of application to the statute of frauds, nor to any question raised in the appeal.

Appellant's employees contracted the debts for the repair of their bicycles, and they were charged in the first instance to the employees as shows by the numerous bills, introduced in evidence, and appellee seeks to hold appellant responsible solely by the O. K. and initials of appellant's Manager.

Among the many meanings or definitions that have been given to the letters "O. K.," we have failed to find any authority which held that they mean a "promise to pay." Appellee cannot hold appellant responsible for the debts of its employees unless appellant has promised in writing to pay such debts, and the promise to pay, and the terms of the contract must be embodied in the writing, and parole evidence is inadmissible to explain the writing in any way whatever. There is no question in our mind of the integrity and righteousness of appellant's defense in this case. It is simply unthinkable, and contrary to all human action that appellee, operating his repair shop situated on the same block with appellant's office, would let an account of this amount run for twelve months without ever mentioning it to appellant's agents. The record shows that appellee practically did this, and stamps his present contention as unworthy of belief.

We again ask the court to reverse the judgment of the court below, and enter judgment here for appellant.

*L. A. Shotts,* for appellee.

Appellant is even trying to get this case reversed by claiming this case is in the statute of frauds. It would have been if appellee had not seen to it that appellant signed each and every bill with his O. K. and his initials "H. L. B." and when he signed that signature to them in writing, then appellant was standing good to appellee in writing and took it out of the statute of frauds, see Blacks Law Dictionary (2 Ed.), page 840, 3 Words and Phrases, 2d Series, page 666. *Getchel & Martin Lumber Co.* v. *Peterson,* 124 Iowa 599, 100 N. W. 550; *Morganton Manufacturing Co.* v. *Ohio R. R. Co.,* 121 N. C. 514, 28 S. E. 474, 61 Am. St. Rep. 679; *Citizens Bank* v. *Farwell,* 56 Fed. 570; *D. & W. R. R. Co.* v. *Sands,* 32 N. E. 722; *Board of Commissioners of Gannison County* v. *Hider,* 107 Pac. 1068 & 1069, 47 Colo. 443.

Then appellant complains of the lower court letting appellee prove the custom and course of business of the telegraph companies in the city of Meridian, in regard to having the messenger boys' bicycles repaired, over his objection, appellee thinks the ruling of the lower court correct, see: *First National Bank* v. *First National Bank,* 22 S. 976; *Henderson Boyd Lbr. Co.* v. *Cook,* 42 S. 838; *W. B. Thompson & Co.* v. *Gosserand,* 682; *Shoe Company* v. *Long Bell Lbr. Co.,* 86 Mo. App. 438. Also see Digest of the Law of Evidence by Stephens, Art. 6, page 9, which reads as follows:

Customs. When the existence of any custom in question, every fact, is relevant which shows, how, in particular instances, the custom was understood and acted upon by the parties then interested.

We differ with appellants in their statement that manager Barksdale did not have authority to contract debts or pay bills. We think your Honors will take judicial notice of the fact that Barksdale was the manager of the Meridian office and he had the customary authority of managers of corporations and was clothed with authority to run Meri-

dian, office in contracting and paying out the usual incidental bills, of which messenger boys' bicycles were among the incidentals. We think witness Barksdale's statement about not O. K.'ing some of the bills carried no more weight than his statement as to what he meant by O. K.'ing the bills in question. As appellee remembers when the suit was filed in the justice of the peace court, it was sworn to, but in the shuffle, it was lost or left out, just as part of the record was which had to be corrected as your Honors will see, by appellant and appellee, supplying as best we could the exhibit and etc., which was left out by the official court stenographer.

In conclusion, we want to remind your Honors that these messenger boys were all minors, whom appellee would not extend credit to and as they were working for the appellants, who stood good for all of the messenger boys' bills by signing them O. K. H. L. B. and in some instances signed them O. K. H. B. L. Manager Postal Telegraph & Cable Company.

We think, considering the facts and the law as a whole, this case should be affirmed.

Anderson, J., delivered the opinion of the court.

(After stating the case as above.) The first section of the statute of frauds (section 4775, Code of 1906; section 3119, Hemingway's Code) provides, among other things, that: "An action shall not be brought whereby to charge a defendant or other party—

"(a) Upon any special promise to answer for the debt or default or miscarriage of another person; . . .

"Unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized."

The rule is well settled that the memorandum in writing necessary to take a case out of the statute of frauds must

contain the substantial terms of the contract, expressed with such certainty that they may be understood from the contract itself or some other writing to which it refers. without resorting to parol testimony. *Waul* v. *Kirkman,* 13 Smedes & M. 599; *Id.,* 27 Miss. 823.

In *Craft* v. *Lott,* 87 Miss. 590, 40 So. 426, 6 Ann. Cas. 670, the facts were that Lott was the son of a defaulting tax collector. Craft, at the request of Lott, had become the surety on the tax collector's bond of Lott's father, and by reason of the defalcation of the father had become liable to the county in the sum of one thousand, two hundred fifty dollars adjudged to be due by him. Craft sued Lott, charging that the latter had undertaken and promised to reimburse him for any loss which he might sustain by reason of the default of the father as such tax collector, which promise was in the form of a letter signed by Lott in the following language addressed to Craft: "Friend John: As it was through me that you signed the old gentleman's bond, I feel honor bound to stand between you and all harm, and whatever damages are assessed against you I will work to pay the same. I have been quarantined here since September 2, but will be in Mobile in a few days."

The court held in that case that the promise contained· in this letter was too vague and indefinite to meet the requirements of the statute.

The only writing relied on to take the promise in this case out of the statute of frauds is found in several O. K.'d bills of the messenger boys of the appellant which, as shown above, simply state in each instance the name of the messenger boy, the amount of the charge, with the letters "O. K." followed by the initials of Barksdale, the manager. There is nothing in these O. K.'d bills to show to whom the amounts were due nor by whom payable—both indispensable under the statute of frauds.

Furthermore· the evidence shows without conflict that Barksdale, the manager, had no authority to bind the appellant to pay these bills. Neither the fact of agency nor the scope and authority of the agent can be shown by the

declarations of such alleged agent. *Sumrall* v. *Kitselman Bros.,* 101 Miss. 783, 58 So. 594; *Riechman-Crosby Co.* v. *Dinwiddie,* 117 Miss. 103, 77 So. 906; *Gulfport & Traction Co.* v. *Faulk,* 118 Miss. 894, 80 So. 340; *Raleigh Co.* v. *Denham,* 119 Miss. 406, 81 So. 118.

Whatever evidence there is, if any, in this case tending to show that Barksdale undertook to obligate the appellant to pay these repair bills consists alone of the statements, declarations, and acts of Barksdale made and performed out of court. Such declarations and conduct under the law have no binding force on the appellant either for the purpose of establishing Barksdale's agency or the scope and authority of his agency.

It follows from these views that the court ought to have directed a verdict for the appellant.

Reversed, and judgment here for appellant.