FINCH v. BRANHAM (two cases).*

[114 So. 257.   Nos. 26560, 26561.]

1. FRAUDS, STATUTE OF. *Contract for purchase of corn over telephone held not within statute, when later confirmed by correspondence.*
   Contract for purchase of corn made over the telephone *held* not within the statute, when taken together with subsequent correspondence between parties immediately following conversation over telephone confirming the transaction.

2. EVIDENCE. *Testimony of understanding as to number of bushels in carload of corn held admissible in action for breach of contract for purchase.*
   In action for damages for breach of contract for purchase of a number of carloads of corn, testimony of understanding as to number of bushels contained in carload as between traders in that commodity *held* admissible.

3. WITNESSES. *Wife held properly required to testify with reference to consideration for conveyance of property by husband to her.*
   In suit to recover for breach of contract to purchase corn and to set aside conveyance of real estate by defendant to wife, testimony of wife *held* admissible with reference to consideration for conveyance of property to her; common-law rule relative to wife testifying against her husband being inapplicable in that, after conveyance, husband could claim no interest in land.

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 1245, n. 24; p. 1257, n. 82; Frauds, Statute of, 27CJ, p. 263, n. 95; p. 336, n. 44, 45; Witnesses, 40Cyc, p. 2214, n. 44; p. 2226, n. 28, 33. As to whether letter referring to oral contract is sufficient memorandum to take contract out of the statute of frauds, see 25 R. C. L. 642.

APPEAL from chancery court, of Walthall county.

HON. ALLEN Cox, Chancellor.

Suit by B. C. Branham against Mrs. Sallie Finch and T. A. Finch. Decree for complainant, and defendants separately appeal. Affirmed and remanded.

*McKeigney & Latham,* for appellants.

I. The complainant's bill must fall before the demurrer unless the alleged contract of sale meets the requirements of the statute of frauds. This the alleged contract fails to do.

There was no delivery of the corn alleged to have been sold, either in whole or in part. There was no payment of the purchase price, either in whole or in part. There is no written contract signed by T. A. Finch, the person sought to be charged. There is no memorandum of the alleged bargain, signed by T. A. Finch or his agent authorized to sign for him.

The letters do not inform the court of the terms of a contract within the meaning of the law. The mind cannot have a clear conception of what the parties were corresponding about by examination and inspection of the letters. Parol evidence would be necessary to explain in order to give contractual meaning to the letters; and as parol evidence is not competent to supply what the parties did not say in writing, the bill must fail.

The quantity of corn is not mentioned. If it be said that the quantity was five cars, we submit that this will not do, since all cars are not of the same capacity. *Fisher* v. *Kuhn,* 54 Miss. 480. See, also, *Craft* v. *Lott,* 40 So. 426. The varying quantities contained in the several cars, as set forth in Exhibit "F," make a large difference, by way of comparison, in the money liability of T. A. Finch. How much money was he to pay for the corn? There is no way to determine this but from the price per bushel and the number of bushels purchased. The letters exhibited to the bill furnish no basis upon

which to determine the sum of money which T. A. Finch should pay to B. C. Branham. Details must be stated. *Bonds* v. *Lipton,* 85 Miss. 209, 37 So. 805.

The complainant alleges that he and the respondent understood that a car of corn contained approximately seven hundred fifty bushels. The exhibit is silent as to this. Where the averments of the bill and the exhibits conflict, the exhibits prevail. *House* v. *Gumble,* 78 Miss. 259, 29 So. 71; *McNeill* v. *Lee,* 79 Miss. 455, 30 So. 821; Griffith's Ch. Pr., section 192, and authorities there cited.

II. Appellee should not have been permitted to testify over objection as to the trade understanding of what is meant by a car of corn. Since all cars are not of the same capacity, there can be no trade understanding. Then, too, this is a matter that could have been taken care of only by the terms of the contract of sale; as complainant's written memorandum is silent as to the "trade understanding" and silent as to the quantity the cars should contain, he should not have been permitted to supply by parol testimony an element necessary to complete his alleged contract of sale. This was error.

III. Another assignment of error has to do with the action of the court in compelling the appellant, Mrs. Sallie Finch, to testify relative to the consideration of the deed made to her by her husband, the appellant, T. A. Finch. Under our law neither was a competent witness against the other. Neither was a competent witness for complainant in this litigation. And this is true whether they were both necessary parties to the bill or not. Section 1576, Hemingway's Code; *Leach* v. *Shelby,* 58 Miss. 681; *Virden* v. *Dwyer,* 78 Miss. 768, 30 So. 45; *Spencer* v. *O'Bryant,* 106 So. 6.

In the case at bar the wife was forced to testify at the instance of the adversary of both herself and her husband. This should not have been done. The action of the court below, we submit, was erroneous and of such serious character as to require reversal.

*A. J. McIntyre,* for appellee.

I. This contract entered into between appellee, B. C. Branham, and appellant, T. A. Finch, on November 20, 1924, was not void by reason of the statute of ·frauds. Section 3123, Hemingway's Code (section 4779, Code of 1906).

While it is true that the contract was· made· over the telephone, immediately following the telephone conversation appellee wrote T. A. Finch a letter, which he registered, confirming the telephone conversation and proceeding to give him the number of cars of corn purchased, the price per bushel for said corn, the weight of said corn per bushel, and the date for the shipping. of said corn.

Appellant wrote appellee a letter acknowledging, receipt of the registered letter, giving his reasons for not answering sooner and telling him that he did his principal business with the Bank of Eupora but advising him further that he could draw on him through either bank.

The terms of the contract having been fully and completely stated by appellee in his letter and the response of T. A. Finch, in which he acknowledges· receipt of this letter and authorizes him to draw on him through either bank at Eupora, are sufficient to take the case out of the statute of frauds. *Willis* v. *Ellis,* 98 Miss. 197, is conclusive in this case.

The letters which passed between Branham and Finch are very much clearer as to what the real contract was and leave no question as to the legality of the contract.

II. Section 3120, Hemingway's Code, makes every gift, grant or conveyance of land, etc., which is· made to defraud creditors of their just and lawful actions, or to hinder or delay them, fraudulent; and there can be no question in this case but what the conveyance by T. A. Finch. of all his property, both real and personal, on November 2, to his wife, Mrs. Sallie Finch, was without consideration.

The court will further bear in mind that as to the issue between appellee and appellant, T. A. Finch, Mrs. Finch was not permitted to testify on that question in any particular, but when she was called upon to testify, it was not against the interest of her husband; for as above shown, T. A. Finch had no interest in this land whatever, and she was therefore called upon to testify simply and solely as against her own interest, and this she did.

HOLDEN, P. J., delivered the opinion of the court.

The suit is in equity by B. C. Branham, appellee, operating as the Cash Grain Company, against the appellants T. A. Finch and his wife, Mrs. Sallie Finch, to recover for the breach of a contract to purchase five carloads of corn, and also to set aside as fraudulent a conveyance of certain real estate from Mr. Finch to his wife, alleged to have been made to defeat the collection of the claim of the appellee against the appellants. From a decree for four hundred twenty dollars and seventy-three cents against the appellant T. A. Finch and an order setting aside the conveyance by Finch to his wife and impressing a lien upon the land for the amount recovered, this appeal is prosecuted.

The case, in short, may be stated as follows: The appellee, Branham, was engaged in the hay and grain business at Union City, Tenn., and was operating under the name of the Cash Grain Company. The appellant T. A. Finch, at Eupora, Miss., ordered over the long-distance telephone five cars of corn from the Cash Grain Company, to be shipped to him at Eupora at agreed prices ranging from one dollar and thirty-two cents to one dollar and thirty-five cents per bushel, delivered at Eupora; a car was to be shipped each week until the five cars were delivered.

Immediately following the sale of the corn by the appellee to the appellant over the telephone, appellee, grain company, wrote a letter to Finch confirming the sale, to-

gether with the terms thereof, and asked appellant what bank he should draw a draft through for the corn as shipped; this letter is in the following form:

"10/20/24.

"Mr. T. A. Finch, Eupora, Miss.—Dear Mr. Finch: We beg to confirm our conversation over phone of today resulting in us selling you five cars of choice Tenn. Snap corn as follows.

"The first car to pe shipped 15th of November, second car 23d November, at one dollar and thirty-two cents per bushel, delivered Eupora, Miss., seventy-two pounds to the bushel.

"And the other three cars to be shipped each week thereafter at one dollar and thirty-five cents per bushel delivered same place, all shipments subject to your inspection on arrival and weights guaranteed.

"We wish to thank you for this business and assure you that we will give you the choice of our shipments, and we know that you will be well pleased with the corn, for as we stated to you in our conversation we will ship you nothing but the very best grade of homegrown Tenn. Snap corn.

"We forgot to ask you which bank that you wanted us to draw our drafts through; kindly advise, and we will be governed accordingly. We are registering this letter so that we may be sure that you get same, will advise you when we commence loading your car, again thanking you for these orders and with best wishes we are,

"Yours very truly."

A few days later, appellant T. A. Finch answered this letter and, in substance and effect, directed the grain company to draw through either bank of Eupora as he did business with both banks there; this letter is here set out as follows:

"Eupora, Oct. 26, 1924.

"Cash Grain Co Union City Tenn

"Gents Yours by Register to hand several days agoe I have bin busyey at they gin i doe my principal Business with they Benk of Eupora Either will doe.

"Resptfuly
"T. A. FINCH.

"My father was a Tenn Man."

Thereupon the appellee, grain company, went into the market and purchased the five cars of grain to fill the contract with Finch. About thirteen days after this the appellant Finch wrote the grain company a letter declining to carry out the contract and refusing to receive and pay for the corn; a copy of this letter is here set out:

"Eupora Nov 8 1924

"Cash Grain Co Union City tenn

"Gents i am sorry i caint take they five cares of corn maters have come upp that I caint pay for same and you need not shipp me any corn i hope i will get in shape later and oblige

"Respt                              T A FINCH"

Following this last letter from Finch the appellee refused to cancel the order for the corn, for the reason that he had already purchased the corn for the appellant, and so wrote him about three days after the last letter from Finch; and a copy of this letter from the grain company to Finch is here quoted:

"11/11/24.

"Mr. T. A. Finch, Eupora, Miss.—Dear Sir: We have your letter of the 8th, and beg to advise that we cannot accept your chancellation on the five cars of corn which we have booked for you as follows, two cars to be shipped this month at one dollar and thirty-two cents per bushel, seventy-two pounds, delivered Eupora, and the other three cars to be shipped one each week following shipment of first two cars, at one dollar and thirty-five cents per bushel.

"When we sold you this corn, we, of course, wrote you confirmation of same and at the same time made purchase and contracts for this corn from the farmer

and will have to comply with our contracts regardless of the condition of market or circumstances, and we are sure you are honorable and gentleman enough not to want us to lose anything on our deal with you, and will make shipment of first car first of next week, and one each week thereafter till contract is filled, and will send draft to your bank at Eupora as per your instructions in your letter; we will expect you to take care of corn on arrival as per your acceptance and our confirmation.

"You may rest assured that we will ship you nothing but the very best of corn; you may look for the car some time next week, will mail you invoice and weights about Monday or last of this week. So please make your arrangements to take care of same on arrival.

"Yours truly."

About two days afterwards, Finch wrote the grain company another letter, positively refusing to carry out his contract for the purchase of the corn; and we here quote this letter:

"Eupora Nov 13 1924

"Cash Grain Co Union City tenn

"Gents Yours of 11 to hand & contents noted i wrote you i could not take the corn and they reason why if you shipp corn hear you doe it at your own Risk for i can nott and will not Recive same i hope this is plain enough

"Respt                    T. A. FINCH."

Again, later on the same day, Finch wrote appellee, grain company, that if he shipped the corn he would do so at his own risk; that he would neither receive it, nor pay for it. This letter of Finch's to appellee is quoted as follows:

"Eupora Nov 13 1924

"Cash Grain Co Union City tenn

"Gents i wrote you this morning and for fear you dont gett same i am wrighting tonight i wrote you they reason for not taking the corn and if you shipp same you doe at your own Risk for I cannot and will not receive same.

"Respt                    T A FINCH."

After this, the appellee, having already purchased the five cars of corn and having it on hand, went into the open market, in the vicinity of Eupora, and sold the corn for the best price obtainable. In the meantime the price of corn had declined considerably from what it was when Finch ordered the five cars from the grain company. The difference in the price of the corn as contracted for by Finch and the price obtained by the grain company at the time of the sale of the corn following Finch's breaching of the contract amounted to four hundred twenty dollars and seventy-three cents.

The appellee, grain company, then filed suit in the circuit court against T. A. Finch to recover the four hundred twenty dollars and seventy-three cents due as damages on account of the breach of the contract for the purchase of the five cars of corn, but before the case came to trial, the appellant T. A. Finch deeded all his property, both real and personal, to his wife, the appellant Mrs. Sallie Finch, for the purpose, as afterwards alleged in the bill, of hindering and preventing the plaintiff in the circuit court from collecting any judgment that he might obtain against the defendant in the case; whereupon the grain company took a nonsuit in the circuit court case and immediately filed a bill in the chancery court, charging that the deed of conveyance from Finch to his wife was fraudulent, was without consideration, and was made for the purpose of preventing the collection of any judgment that might be obtained against Mr. Finch by the grain company, and praying for its cancellation, etc. The bill to which Mrs. Sallie Finch was made a party defendant with her husband, T. A. Finch, was demurred to upon the ground that the alleged contract for the purchase of the corn was void, under the statute of frauds, because it was not in writing, was indefinite, and as no part of the property had been delivered under it, etc. The demurrer was overruled. The appellants Finch and his wife then filed separate answers denying the allegations of the bill.

148 Miss.—10.

The case was heard upon the merits, and the chancellor decided that the contract for the purchase of the corn was valid, and that the transfer of the property from Finch to his wife was void because of no consideration; and the decree further gave a lien upon the land to secure the payment of the decree for the damages of four hundred twenty dollars and seventy-three cents mentioned above. The appellant T. A. Finch did not testify.

The testimony in the case, as we see it, fully sustained the finding of fact by the chancellor that the transfer of the property from Finch to his wife was without consideration, and was made for the purpose of defeating the appellee in the collection of his claim of four hundred twenty dollars and seventy-three cents. The charge that the transfer of the property was fraudulent was overwhelmingly proved, and the record palpably reflects the fact.

The contention that the contract between the grain company and the appellant Finch was void as being within the statute of frauds is untenable. The contract for the purchase of the corn made over the telephone would have been, no doubt, within the statute, if taken alone, but, taken together with the correspondence between the parties immediately following the conversation over the telephone, constitutes a contract in writing, and is binding upon all parties for the amount of the corn purchased, five carloads, at certain definite prices, to be delivered at Eupora at certain times, all of which was understood and confirmed by the purchaser. The contract seems to be definite with reference to the terms, and it is our judgment that the letters passing between the parties distinctly recognize the existence of the contract, and set forth with certainty the essential details of the transaction. See *Bonds* v. *Lipton Co.*, 85 Miss. 209, 37 So. 805; *Willis* v. *Ellis*, 98 Miss. 197, 53 So. 498, Ann. Cas. 1913A, 1039.

Counsel for appellant make the point that the amount of the corn to be shipped in each car was indefinite be-

cause one car might hold more corn than another; and counsel urge that the court erred in allowing testimony to show that a carload of corn, as commonly known in the trade, averages seven hundred fifty bushels. But we think the court was correct in permitting the appellee to show that it was customary, and commonly known to all parties in such trade, that seven hundred fifty bushels of corn constitute a carload. It would be nearly impossible to specify the exact number of bushels that each car would contain, and we think it was sufficient to establish the fact that when you buy "a carload of corn" it means that you are buying about seven hundred fifty bushels of corn. It was competent to show what is understood to be a carload of corn as between traders in that commodity.

Counsel for appellant next insist that the lower court erred in permitting complainant below to introduce the testimony of Mrs. Sallie Finch, wife of the appellant Finch, because it was permitting the wife to testify against her husband. We recognize this common-law rule, but do not think it applicable in the present case.

The record discloses that the wife was introduced by appellee and testified in the case, but that she gave no testimony whatever with reference to the liability of her husband for the breach of the contract for the purchase of the corn; she did not testify, nor was she questioned, in regard to the controversy between her husband and the grain company as to the breach of the contract for the purchase of the five cars of corn; she only testified with reference to the consideration for the conveyance of the property by her husband to her. Therefore we do not think that she testified against the interest of her husband, because he then claimed no interest in the land he had deeded to her; surely, the husband could not complain of the testimony of his wife about a matter in which she alone was legally interested; he could not consistently claim any interest in the land after deeding it to his wife; the deed was valid as between him and his wife.

Consequently we see no merit in the contention that the court erred in permitting the wife to testify against the interest of her husband; she was testifying against her own interest, and not against that of her husband. The result of her testimony cannot be said to have been unfavorable to her husband.

The decree of the chancellor is correct in all respects, and is therefore affirmed.

*Affirmed, and remanded for further proceedings.*